795 A.2d 367

**In re Assignment of Judge H. Patrick McFALLS, Jr.**

Supreme Court of Pennsylvania.

Argued April 9, 2002.

Decided April 12, 2002.

Robert O. Lampl, Pittsburgh, for H. Patrick McFalls.

Howard M. Holmes, Philadelphia, for Judge Kelly and Judge James, et al.

Before ZAPPALA, C.J., CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## ORDER

PER CURIAM.

**AND NOW**, this 12th day of April, 2002, upon consideration of the Petition for Review, the Answer to Rule to Show Cause, the Brief on behalf of Judge H. Patrick McFalls in regard to Rule to Show Cause dated February 22, 2002, the Brief in Support of Rule to Show Cause on behalf of Petitioners, and the admissions of record, and after hearing on the matter, it is hereby ordered that the Respondent is suspended without pay for a period of thirty (30) days. The suspension is effective as of the date of this Order. It is further ordered that the medical benefits of the Respondent are not to be suspended during the thirty (30) day period.

In the exercise of this Court's discretion, it is further directed that the matter is referred to the Judicial Conduct Board pursuant to Pa. Const. Art. V, § 18.

Opinion to follow.

## OPINION

Chief Justice ZAPPALA.

This opinion is filed in support of the *per curiam* order of this Court dated April 12, 2002. In our order, we directed that Respondent, the Honorable Judge H. Patrick McFalls, be suspended, without pay, for a period of thirty (30) days.[1] Further, we referred the matter to the Judicial Conduct Board pursuant to the Pennsylvania Constitution, Article V, Section 18.[2]

This matter was commenced before our Court on February 12, 2002, by the filing of an Emergency Petition for Issuance of Rule to Show Cause, filed by Petitioners, the Honorable Robert A. Kelly, President Judge of the Court of Common Pleas of Allegheny County, and the Honorable Joseph M. James, Administrative Judge of the Civil Division of the Court of Common Pleas of Allegheny County. Specifically, in the petition, Petitioners sought

issuance of a rule to show cause why a judge of a court of common pleas has repeatedly failed to comply with directives of his President Judge and Administrative Judge to meet with them to effect his return to judicial duties and to begin his judicial assignment, and is therefore a matter subject to the original and plenary jurisdiction of this Supreme Court of Pennsylvania pursuant to Article V, Sections 1, 2, and 10 of the Pennsylvania Constitution and 42 Pa.C.S. § 721 and § 726.

Petitioner's Emergency Petition for Issuance of Rule to Show Cause at 1, ¶ 1.[3]

1. In our order, we directed that Respondent's medical benefits were not to be suspended during the thirty (30) day period.

2. Article V, Section 18 sets forth the composition, powers and duties of the Judicial Conduct Board.

3. Petitioners also filed an Application to File Exhibit Under Seal, which this Court entered an order granting on February 20, 2002. The contents of the exhibit were filed, under seal, on February 21, 2002.

By order dated February 22, 2002, this Court entered a *per curiam* order issuing a rule upon Respondent "to show cause for his alleged failure to comply with his judicial assignment, as well as why he should not be subject to interim suspension from his judicial duties." The rule was returnable on February 27, 2002, and, on that day, Respondent filed his Answer to Emergency Petition for Issuance of Rule to Show Cause. Thereafter, this Court, by order dated March 8, 2002, directed the parties to appear before the Court during its April argument session to consider "whether sanctions, i.e., no further action by the Court, private or public reprimand, suspension with or without pay, or removal from office, should be imposed upon the Respondent."

The relevant factual averments relating to this matter, as set forth in the parties' petition and answer, are as follows. Respondent, a duly-commissioned Judge of the Court of Common Pleas of Allegheny County, first elected in November 1985, and subsequently retained in November 1995, was assigned to "general assignment" in the civil division, hearing jury, non-jury and equity cases. *Id.* ¶¶ 3 & 4. On November 14, 2001, Respondent fired his tipstaff, secretary and law clerk, and, thereafter, on or about December 5, 2001, Respondent's employees filed federal lawsuits against him alleging that they were fired because they had reported that Respondent abused alcohol and exhibited behavior that they believed affected his ability to perform his duties. *Id.* ¶ 5.[4]

Respondent went on administrative leave with pay on December 6, 2001, and has remained on paid administrative leave since that date. Petition at 2, ¶ 6. At Petitioners' request, Respondent was evaluated by Dr. Todd Marion, including several hours of face to face interviews and telephone interviews, beginning on December 7, 2001. Petition at 2, ¶ 7; answer at 2, ¶ 7. Based on the result of the evaluation conducted by Dr. Marion, Respondent requested that he resume

4. Respondent states in his answer that he has filed a Motion to Dismiss the federal litigation and that said motion is currently pending before the United States District Court of the Western District of Pennsylvania. Respondent's answer at 2, ¶ 5.

judicial duties. Petitioners then attempted to meet with Respondent to discuss his judicial assignment and, in light of recent events, for them to provide him with necessary conditions under which he would return to judicial duties. Petition at 2, ¶ 8. In paragraph 9 of the petition, Petitioners set forth, in detail, the factual scenario that is at the root of the controversy pending before our Court. In this paragraph, Petitioners state the following:

9. Judge McFalls failed to schedule the required meeting and failed to attend meetings scheduled by President Judge Kelly on five occasions, as follows:

a. By telephone conversation on Thursday, January 10, 2002, Robert O. Lampl, counsel for Judge McFalls, advised AOPC counsel that Judge McFalls would return to judicial duties on Monday, January 14, 2002, and agreed that Judge McFalls would telephone President Judge Kelly prior to that date to arrange the required meeting with President Judge Kelly and Judge James to discuss Judge McFall's judicial assignment and the aforementioned guidelines to facilitate his return to judicial duties. Judge McFalls did not telephone President Judge Kelly, and did nothing to further his return from administrative leave to judicial duties. Nothing further was heard from Judge McFalls until Wednesday, January 16, 2002, six days later.

b. Thereafter, on Wednesday, January 16, 2002, Robert O. Lampl, counsel for Judge McFalls, telephoned AOPC counsel, with Judge McFalls also conferenced in to the telephone conversation from another telephone. Judge McFalls and his counsel told AOPC counsel at that time that Judge McFalls would return to judicial duties on Friday, January 18, 2002, and would contact President Judge Kelly prior to that time to schedule the required meeting. Judge McFalls never arranged a meeting with President Judge Kelly and did nothing to further his return from administrative leave to judicial duties.

c. After regular chambers hours on Thursday, January 17, Judge McFalls left a message on President Judge Kelly's chambers message machine, stating that Judge

McFalls would be returning on Monday, January 21, 2002, a court holiday. Judge McFalls never scheduled a meeting, and did not appear on Monday, January 21, 2002.

d. Because of Judge McFalls' repeated failure to contact President Judge Kelly to schedule a meeting with himself and Judge James, President Judge Kelly scheduled a required meeting for Thursday, January, 31, 2002, at 2:30 p.m., giving Judge McFalls more than ten days notice by letter to his home and chambers. (See letter dated January 18, 2002, from President Judge Kelly to Judge McFalls, attached at Exhibit D).

e. Judge McFalls did not attend the scheduled meeting. During the time the meeting was to be held, at 2:30 p.m., Robert O. Lampl, counsel for Judge McFalls, telephoned President Judge Kelly and left a message that Judge McFalls had been attempting, since early morning, to fly back to Pittsburgh from Florida, but could not get onto an airplane because he had no photo identification. Mr. Lampl requested another meeting. President Judge Kelly made a record setting forth the fact that Judge McFalls did not attend the meeting. (See Transcript dated 1/31/02, attached as Exhibit E).

f. In response to the request of counsel for Judge McFalls to reschedule the meeting, President Judge Kelly and Judge James once again rescheduled the administrative meeting to give Judge McFalls his judicial assignment and set forth guidelines for his return to judicial duties. The meeting was rescheduled for 9:00 a.m. on Monday, February 4, 2002. Judge McFalls was notified (1) through his counsel (by telephone conversation with AOPC counsel, and by letter from AOPC counsel to Robert O. Lampl, counsel to Judge McFalls, attached as Exhibit F); and (2) personally advised by telephone call to Judge McFalls via his cell phone, in a conversation with Eileen Morrow, secretary to President Judge Kelly, of the rescheduled meeting. Judge McFalls was further advised that his attendance at the rescheduled meeting was mandatory, and that no further excuses would be accepted. Judge McFalls and his counsel

both indicated that Judge McFalls understood and would attend the meeting.

g. Judge McFalls did not attend the rescheduled meeting, and at 9:29 a.m., nearly one-half hour following the time the meeting was to begin, President Judge Kelly made a record setting forth the fact that Judge McFalls did not attend the meeting. (See Transcript dated 2/4/2002, attached as Exhibit G).

h. Nothing further was heard from Judge McFalls until Tuesday, February 5, at approximately 3:45 p.m., when Judge McFalls physically appeared in Judge Kelly's chambers. Judge Kelly was not in his chambers at that time, and Judge McFalls was so informed by Judge Kelly's secretary.

i. Judge McFalls, without meeting with Judge Kelly and Judge James, as required, required the calendar control clerk to provide him with argument files and requested the court administrator of Allegheny County to approve hiring of two personnel employees (tipstaff and law clerk).

j. On February 8, 2002, Judge Kelly sent a letter to Judge McFalls, advising Judge McFalls that his taking of calendar control files is interpreted "as an attempt to resume judicial duties without complying with the terms, conditions and steps outlined in previous correspondence." (See letter dated February 8, 2002, from President Judge Kelly to Judge McFalls, attached as Exhibit H).

Petition at 2–4, ¶ 9.

Petitioners aver that Respondent's continued failure to meet with them regarding his return to judicial office and to review the guidelines under which his return would be effected constitutes a dereliction of his judicial duties, which is either willful or, in the alternative, due to a physical or mental impairment. Thus, Petitioners request that this Court enter an appropriate order suspending Respondent from his judicial duties as this Court determines is just and proper.

Respondent, in his answer, generally admits the averments contained in paragraph 9 and further sets forth the following:

By way of further answer, the Respondent did, in fact, arrive in Pittsburgh on Monday, February 4, 2002 in the evening, and while it may have appeared thoughtless to have failed to postpone the appointment scheduled for earlier that day, specifically 9:00 a.m., such neglect was inadvertent and due to Respondent's difficulties in travel from Miami to Pittsburgh. The Respondent was available in his chambers the next day, Tuesday, February 5, 2002, and accessible for the balance of that week, Respondent attempted to contact both Judges Kelly and James unsuccessfully during the balance of the week. Attached hereto as Exhibit C and made part hereof is a Letter dated February 8, 2002 from the Honorable Robert A. Kelly to the Respondent. Attached hereto as Exhibit D and made part hereof is a memorandum dated February 8, 2002 from Respondent's counsel Robert O. Lampl to A. Taylor Williams, Counsel for the Honorable Robert A. Kelly.

Answer at 3, ¶ 9. Respondent does not provide any other reasons for his failure to attend the previously scheduled meetings with Petitioners; nor does he address the fact that he attempted to resume his judicial duties without meeting with Petitioners as required. Rather, in new matter, Respondent states that while he admits to the averments of paragraph 9 of the petition,

the Petitioners fail to recognize that the Respondent was fully accessible from Tuesday, February 5, 2002 until the present time for reinstatement and resumption of his judicial duties and for any meetings Petitioners desired to have with Respondent.

*Id.* at 5, ¶ 16.

Respondent then sets forth a lengthy recitation of the treatment he has been subjected to by the media and the public *since* the time of the filing of this petition. Specifically, Respondent claims that he has been "stalked by the media paparazzi," that he "has been subjected to the penultimate [sic] invasion of his privacy," that he never intended to bring disrepute and/or embarrassment to the judiciary" and that he

has, "in the very recent past, lapsed into alcohol use." *Id.* at 6–7, ¶¶ 17–20.

While it appears that Respondent is aware that the current matter before this Court, as brought forward by the Petitioners, solely concerns his repeated failure to appear before the Petitioners in order to discuss the terms and conditions for his resumption of his judicial duties, Respondent attempts to invoke the incidents that occurred subsequent to the filing of the petition, as somehow justifying his conduct. For example, Respondent states that the matter "which on its surface would otherwise be a relatively simple and minor administrative matter, which the Respondent could easily cure, has become a cause celeb [sic] in the media and local community." *Id.* at 7, ¶ 17. Moreover, rather than addressing his failures to meet with Petitioner's as requested, Respondent criticizes Petitioners for failing to meet with him when he became available after he failed to appear at the February 4, 2002 meeting scheduled by Petitioners. Specifically, Respondent states that he "fully intended to comply [with the administrative process required by Petitioners] ... during the week of February 5, 2002 through February 12, 2002." Finally, in this regard, Respondent sets forth the following

> While the Respondent, admittedly, committed a misstep by not rescheduling the meeting of February 4, 200, he was consequently shunned and subjected to this Petition with its attendant negative publicity. From February 12, 2002 to the present time, the Respondent has been treated like a fugitive and has had virtually no moment of peace.

*Id.* at 6, ¶ 20.

Based on the forgoing, Respondent represents that "in deference to the respect he has for the judiciary and his role therein," he has entered into a treatment program, and, he further requests "a continuation of his administrative leave for 120 days to enable him to confirm to the appropriate officials of the Administrative Office and/or the Judicial Conduct Board his fitness for reinstatement and resumption of his judicial duties." *Id.* at 6–7, ¶ 21.

Despite Respondent's assertions, as noted previously, the sole matter before this Court concerns Respondent's continued failure to meet with Petitioners, as required on several occasions, to discuss the resumption of his judicial duties and the terms and conditions appurtenant thereto. Respondent does not seriously dispute his failures in this regard; nor does he deny the claims made by the Petitioners in the petition. Thus, despite the averments made by Respondent regarding events that occurred *after* the petition was filed, this Court is only concerned with the events that occurred *prior* to the filing of the petition. In our view, Respondent's continued failures to meet with Petitioners as set forth in the petition warrants the imposition of a sanction by this Court.

Pursuant to Article V, Section 2 of the Pennsylvania Constitution, this Court has been designated "the highest court of the Commonwealth" and is vested with the "supreme judicial power of the Commonwealth." Article V, Section 10(a) of the constitution establishes that this Court "shall exercise general supervisory and administrative authority over all the courts and justices of the peace...." In *In re Assignment of Avellino*, 547 Pa. 385, 690 A.2d 1138 (1997), this Court held that the imposition of a sanction was proper where an unjustified defiance of our legitimate, historical, and constitutional, supervisory and administrative authority had occurred.

In *Avellino*, President Judge Alex Bonavitacola, President Judge of the Court of Common Pleas of the First Judicial District, and Administrative Judge John Herron filed a petition seeking a rule to show cause why Judge Bernard J. Avellino did not comply with an administrative assignment to preside over criminal trials in the court's felony-waiver program. In the interim, we entered an order directing Avellino to comply with the assignment.

In rejecting Avellino's assertion that this Court lacked jurisdiction to entertain the petition, we noted that because the matter involved an assignment given to Avellino by the administrative judge of the court, and because the authority under which assignments are made ultimately derives from this Court, "review and resolution of any disputes concerning

assignments must necessarily be subject to the authority of this Court." *Avellino,* 690 A.2d at 1141. In this regard, we further stated the following:

> We have thus far established that a judge has no right or interest deriving from constitution, statute, rule, seniority of service or otherwise to receive or continue in any assignment or type of assignment. We have also established that the assignment of Judge Avellino to the felony-waiver program was made under the administrative authority of this Court delegated to Judge Herron as Administrative Judge, and therefore review of that assignment for any reason is properly within the supervisory power of this Court.

*Id.* at 1143.

Thus, based on the foregoing, it is clear that this Court has jurisdiction to entertain the within petition and to impose a sanction in response thereto. Here, Respondent failed to comply with the Petitioners' repeated attempts to conduct a meeting at which the terms and conditions regarding Respondent's judicial assignment were to be discussed. Clearly, this administrative matter is within the supervisory power of this Court.

While Respondent does not dispute the authority of this Court to take action in this case, Respondent argues that the better course would be for this Court to decline exercising its jurisdiction and defer to the procedures set forth in the Pennsylvania Constitution relating to the Judicial Conduct Board. Specifically, Respondent argues that this Court would need to proceed as fact-finder in order to evaluate the current claim and determine an appropriate sanction. Respondent points out that the procedures set forth in Article V, Section 18 vest the Board with investigative powers, adversarial procedures and confidentiality protections that are not available in the within process. We disagree.

We see no reason why this Court should not exercise its authority here and impose a sanction. Contrary to Respondent's assertion that this Court will, necessarily, have to engage in fact-finding, we note that here, based upon the

petition and the answer, there is no dispute of fact regarding Respondent's failure, on several occasions, to meet with Petitioners regarding his judicial assignment. Respondent's explanation for his failures in this regard does not compel a different result. Moreover, Respondent does not dispute that he attempted to resume his judicial duties without first meeting with Petitioners to discuss his assignment. While we do not view Respondent's behavior as specifically rising to the level of Judge Avellino's conduct,[5] we conclude that the imposition of a thirty day suspension without pay is the proper response to Respondent's unjustified defiance of Petitioners' directives and our legitimate supervisory and administrative authority.[6]

Despite the foregoing, we recognize the existence of the Judicial Conduct Board, which is vested with authority to initiate and/or investigate complaints regarding judicial conduct, and its independent authority to act. *See Avellino*, 690 A.2d at 1143 n. 6 (noting that "action by this Court pursuant to our supervisory power in no way affects the independent authority of the Judicial Conduct Board to investigate the same conduct for purposes of disciplinary action pursuant to Article 5, Section 18"). Thus, we further referred this matter to the Judicial Conduct Board for review.[7]

5. As noted earlier, Judge Avellino explicitly refused to comply with a direct assignment by the administrative judge of the court of common pleas and defied our order directing him to comply with said assignment.

6. In *Avellino*, we suspended Judge Avellino for three months without pay and directed that upon resumption of his judicial duties he file reports with the administrative judge of the common pleas court, and with this Court, and that he be subjected to performance evaluations.

7. Of particular note are the averments made by Respondent regarding his conduct (his lapse into alcoholism) and the events which he alleges occurred after the filing of the within petition as well as his request that he be put on administrative leave for 120 days to enable him to confirm to the appropriate officials of the Administrative Office and/or the Judicial Conduct Board his fitness for reinstatement and resumption of his judicial duties. We view the procedures governing the Board as established in the constitution and rules of procedure as uniquely geared toward evaluating these collateral issues.

For example, Article V, Section 18(a)(9) specifies that where the Board finds probable cause to file formal charges concerning a mental

---

or physical disability, the Board can, *inter alia,* provide a judicial officer with the opportunity to enter a rehabilitation program. Likewise, Rule 34 of the Rules of Procedure governing the Judicial Conduct Board sets forth a procedure in this regard.