912 A.2d 827

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Raheem WHITMORE, Appellee.**

Supreme Court of Pennsylvania.

Submitted Jan. 19, 2006.

Decided Dec. 29, 2006.

Hugh J. Burns, Philadelphia, Robert F. Patrone, for the Com. of PA, appellant.

Emily Beth Cherniack, Ardmore, for Raheem Whitmore, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER AND BALDWIN, JJ.

## *OPINION*

Justice NEWMAN.

We granted allowance of appeal to decide "whether the Superior Court exceeded its authority by *sua sponte* removing the sentencing judge." *Commonwealth v. Whitmore*, 584 Pa. 436, 884 A.2d 247 (2005). For the reasons herein, we hold that it did, and therefore, reverse the Superior Court.

## FACTS AND PROCEDURAL HISTORY

On January 11, 1999, in the entrance of an alleyway behind the 3100 block of Custer Street in Philadelphia, Raheem Whitmore (Appellee) sold Patricia Lee (Lee) six clear plastic, black-lidded vials containing crack cocaine in exchange for an undetermined amount of U.S. currency. Sergeant Frank Gillespie (Sgt. Gillespie), Officer Dan Calder (Officer Calder), and Officer John McNesby (Officer McNesby) drove past in an unmarked car and observed the hand-to-hand exchange. All three officers are plainclothes officers with the City's narcotics enforcement team and were in the area investigating complaints of open-air drug transactions. Officer Calder, who had extensive experience with narcotics investigations, immediately recognized that he had witnessed a narcotics transaction. The officers exited their vehicle, approached Appellee and Lee, and saw Appellee sorting out the cash Lee had given him. Appellee also appeared to be holding more small objects in his hand, which Officer Calder believed to be narcotics.

Upon seeing the officers, Appellee and Lee immediately separated and walked in different directions. Additionally, Appellee dropped two more clear plastic, black-lidded vials of crack cocaine into a nearby yard, crumpled and dropped the money Lee had handed him, and fled down the alley. Sgt. Gillespie pursued Lee from the alley and quickly arrested her. When searching her, Sgt. Gillespie recovered the six clear plastic, black-lidded vials of crack cocaine, which he saw her put in her right jacket pocket, three packets of crack cocaine, and a bag of sixteen prescription pills from elsewhere on her person.

A repair truck blocked the end of the alley in which Appellee was fleeing, thereby giving Officer Calder an opportunity to apprehend Appellee and arrest him. Officer Calder recovered the two vials of crack cocaine and Officer McNesby recovered the cash, totaling $75.00, which Appellee had discarded.

On March 29, 2000, following a trial presided over by the Honorable Judge Eugene E.J. Maier (Judge Maier), a jury

convicted Appellee of possession of a controlled substance, 35 P.S. § 780–113(a)(16), and possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780–113(a)(30). Following the denial of post-trial motions, on April 5, 2000, Judge Maier sentenced Appellee to an aggregate term of ten to twenty years of imprisonment. Because Appellee was convicted of PWID with respect to crack cocaine, he was eligible for a maximum sentence of ten years. *See* 35 P.S. § 780–113(f)(1.1). However, this conviction was Appellee's second drug offense. As such, the trial court was authorized to sentence Appellee to a term of imprisonment of up to twice the term otherwise authorized. *See* 35 P.S. § 780–115(a) (the recidivist statute for repeat drug offenders). Thus, the applicable statutory limit for Appellee, as a repeat drug offender, was twenty years of imprisonment. Appellee did not object at the time of sentencing nor did he file any motion to reconsider his sentence before the trial court. Instead, Appellee filed a timely Notice of Appeal.

Upon receipt of Appellee's Notice of Appeal, the trial court ordered him to file a Rule 1925(b), Pa.R.A.P.1925(b), statement of matters complained of on appeal. Appellee timely complied, alleging various trial errors and a single sentencing claim that Judge Maier erred by departing from the sentencing guidelines. On September 8, 2000, counsel filed an untimely Amended Rule 1925(b) Statement raising an additional sentencing claim that the trial court "double counted" his prior conviction by using it in the calculation of the prior record score and then using that same conviction for sentencing enhancements.

On July 26, 2001, in a memorandum Opinion, a three-judge panel of the Superior Court affirmed the Judgment of Sentence. After addressing and rejecting Appellee's claims of error during trial, the panel turned to Appellee's sentencing claims. First, the panel recognized that Appellee was requesting review of two issues: (1) whether the trial court improperly "double counted" Appellee's criminal history when imposing sentence; and (2) whether the trial court failed to place on the record adequate reasons for imposing the statuto-

ry maximum sentence, which was beyond the aggravated guideline range. The panel recognized that Appellee failed to include his first claim concerning "double counting" within his original Rule 1925(b) Statement, and only raised it in the Amended Rule 1925(b) Statement, which was untimely filed. Therefore, the panel deemed this issue waived. The panel also determined that Appellee's second issue, that the trial court failed to articulate adequate reasons for the sentence imposed, was interdependent with his "double counting" claim and, therefore was also waived. Finding waiver of both issues, the Superior Court affirmed the trial court. *Commonwealth v. Whitmore*, 782 A.2d 1061 (Pa.Super.2001). On January 8, 2002, this Court denied Appellee's Petition for Allowance of Appeal. *Commonwealth v. Whitmore*, 568 Pa. 631, 793 A.2d 907 (2002).

Appellee then filed a timely Petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. The PCRA court appointed counsel, who filed an Amended PCRA Petition, alleging ineffective assistance of prior counsel for failing to preserve Appellee's sentencing claims. The Commonwealth filed a Motion to Dismiss. After issuing notice of intent to dismiss pursuant to Pa.R.Crim.P. 907, the PCRA court issued an order dismissing the Amended PCRA Petition without a hearing. The PCRA court determined that the sentencing claims had been previously litigated, citing *Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935 (2001), and opined that Appellee was not entitled to post-conviction review of claims previously litigated by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims. PCRA counsel filed a timely notice of appeal.

A three-judge panel of the Superior Court reversed in a published Opinion. *Commonwealth v. Whitmore*, 860 A.2d 1032 (Pa.Super.2004). The Superior Court disagreed with the PCRA court that the discretionary aspects of sentencing issues were previously litigated. It noted that Appellee's claims on direct appeal were rejected because they were not properly preserved and the prior appeal did not reach the

merits of the claims. The panel further found that because the sentencing claims raised on collateral appeal were couched in terms of ineffective assistance of counsel, they were cognizable under the PCRA, citing *Commonwealth v. Hernandez,* 755 A.2d 1, 6 (Pa.Super.2000). Hence, the panel proceeded to address the merits. *Whitmore,* 860 A.2d at 1036.

The Superior Court focused on Appellee's allegation that the trial court impermissibly "double counted" by twice relying on his prior conviction in imposing sentence. The panel determined that this claim amounted to the type of substantial question contemplated in *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002) (holding that a substantial question exists where a party articulates reasons why a particular sentence raises doubts that the trial court did not properly consider the general sentencing guidelines). The Superior Court further found that Appellee's "double counting" claim had arguable merit, satisfying the first prong of the ineffective assistance of counsel test. *See Commonwealth v. Pierce,* 567 Pa. 186, 786 A.2d 203, 213 (2001), *abrogated on other grounds, Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002) (holding that to prove ineffective assistance of counsel, a three-prong test must be satisfied: (1) that the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused the defendant prejudice). The Superior Court concluded as follows:

It is well-settled that only discretionary sentencing challenges which present a substantial question fall within the scope of appellate review. *See Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617, 626 (2002). A claim that the sentencing court failed to state adequate reasons on the record for the sentence imposed presents a substantial question. *See Commonwealth v. Goggins,* 748 A.2d 721, 728 (Pa.Super.2000). Additionally, an assertion that the sentencing judge in imposing sentence relied on factors already included in the defendant's prior record score raises a substantial question. *Id.* at 732. Thus, Whitmore's claims have arguable merit. Moreover, we need not remand for

hearing as appellate counsel's failure to perfect on appeal a discretionary sentencing claim which has arguable merit is without any reasonable basis designed to effectuate his client's interest. *Cf. Commonwealth v. Hernandez,* 755 A.2d 1, 12 (Pa.Super.2000) (observing that counsel's failure to preserve a discretionary sentencing challenge for direct appeal lacks a reasonable basis to effectuate appellant's interest). Consequently, our only inquiry is to determine whether Whitmore's claims rise to the level of requisite prejudice to afford him relief.

*Whitmore,* 860 A.2d at 1036 (citations modified).

Concluding that trial counsel's performance lacked a reasonable basis for failing to appeal a discretionary sentencing claim that has arguable merit, the panel finally considered whether Appellee was prejudiced by counsel's actions. The Superior Court quoted an exchange between the Commonwealth's attorney and the trial court, in which the Commonwealth reminded the court that Appellee had a prior drug conviction. The Superior Court stated that:

[a] review of the record reveals that Whitmore's sentence of ten to twenty years' imprisonment was based on the following exchange:

[THE COMMONWEALTH]: Your Honor, if I may ask, the maximum being 10 to 20 here, is there a probationary tail?

\* \* \*

[THE COMMONWEALTH]: It's a second conviction, Your Honor.

THE COURT: All right. **I didn't see a second conviction.** The Court is going to reconsider the sentence.

[WHITMORE'S COUNSEL]: Your Honor, if you felt that five to ten was the appropriate sentence, Your Honor, I don't see—

THE COURT: I felt that five to 10 was the appropriate sentence **because that's what I thought was the maximum sentence.**

[WHITMORE'S COUNSEL]: Your Honor, is it the appropriate sentence because it's the maximum, or is it the appropriate sentence because five to 10 is inappropriate? Five to ten was appropriate at the time.

THE COURT: It was appropriate at that time because it was the maximum. **It sounds like Mr. Whitmore should go to jail for about 50 years, quite frankly.**

*Id.* at 1037 (citing N.T., 4/5/00, at 13–15) (emphasis in original).

Apparently, the Superior Court interpreted this exchange as evidence that the trial court erroneously sentenced Appellee above the aggravated range of the Sentencing Guidelines by considering his prior conviction, a factor already included in his prior record score. The authorized penalty for a violation of 35 P.S. § 780–113(a)(30) with respect to crack cocaine has a statutory maximum of ten years of imprisonment. 35 P.S. § 780–113(f)(1.1). The statutory limit is doubled, pursuant to 35 P.S. § 780–115(a), if the defendant has a prior record for the same drug convictions. "Any person convicted of a second or subsequent offense under clause (30) of subsection (a) of section 13 of this act or of a similar offense under any statute of the United States or of any state, may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both." 35 P.S. § 780–115(a) (internal footnote omitted). Under these circumstances, Appellee's second PWID conviction triggered the recidivist statute and doubled the applicable statutory limit.[1]

Finally, the Superior Court added that before vacating the sentence, it felt compelled to offer instructions upon remand. The panel determined that Judge Maier, the trial judge who had imposed sentence, had only given cursory mention of the Sentencing Guidelines rather than serious deliberation. *Id.* at 1038. It found "equally disturbing" that Judge Maier's pri-

1. It is important to note that this Opinion addresses only the section of the Superior Court Opinion that ordered a new trial judge for the re-sentencing proceeding. We do not address the substantive claim concerning the sentencing or the prejudice that results; rather, that information is merely background for the issue before us.

mary reason in imposing sentence was the seriousness of the crime. *Id.* The panel concluded that because there was nothing in the record to indicate that Appellee received an individualized sentence tailored to him and the attendant facts of the case, "the integrity of the re-sentencing proceeding must be protected by ensuring that any appearance of bias is dispelled." *Id.* Accordingly, it ordered that a new trial judge be assigned to preside over the re-sentencing proceeding.[2] The Commonwealth's Application for Reargument was denied by the full court on November 29, 2004. On September 13, 2005, we granted allowance of appeal limited to the issue of "whether the Superior Court exceeded its authority by *sua sponte* removing the sentencing judge." *Commonwealth v. Whitmore,* 584 Pa. 436, 884 A.2d 247 (2005).

## DISCUSSION

■ The Commonwealth argues that the Superior Court improperly exercised supervisory power over the trial court by ordering the removal of a sentencing judge. The Commonwealth asserts that ordering the removal of a trial judge not only compromises the integrity of the judicial process, but also exceeds the Superior Court's jurisdictional role as an intermediate appellate court, usurping authority expressly and exclusively reserved for this Court. The Commonwealth further notes that neither party sought Judge Maier's recusal, the record for recusal was not developed in the trial court or PCRA court, and Judge Maier did not have the opportunity to address a motion to recuse himself.

Ultimately, the question is whether the Superior Court has the power to order the removal of a judge from a case, where that judge has made no ruling concerning recusal because he or she was never asked. Such a question falls within the scope of supervisory and administrative powers over all of the

2. The panel added that due to its finding that trial counsel was ineffective for failing to preserve the sentencing issue before the trial court, it was not necessary to reach Appellee's second issue concerning whether all prior counsel were ineffective for failing to preserve a challenge to the trial court's remark during sentencing that "It sounds like Mr. Whitmore should go to jail for about 50 years, quite frankly." *Id.*

courts. Article V, Section 10(c) of the Pennsylvania Constitution gives the Pennsylvania Supreme Court general supervisory and administrative authority over all of the courts of this Commonwealth and has also been interpreted as giving our Court the authority to review and resolve disputes concerning the assignment of common pleas court judges. *See In re Avellino*, 547 Pa. 385, 690 A.2d 1138, 1141 (1997); *cf. In re McFalls*, 568 Pa. 228, 795 A.2d 367, 373 (2002) (holding that where the failure of a court of common pleas judge to comply with directives of the president judge and the administrative judge of the court of common pleas, to meet with them to effect his return to judicial duties while the judge was on administrative leave with pay, was an administrative matter within the supervisory power of the Supreme Court).

In *Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985), the defense in a personal injury action alleged for the first time on appeal that the trial court had a prior relationship with plaintiff's counsel in violation of Canon 3(C) of the Code of Judicial Conduct.[3] We held that the Superior Court erred when it *sua sponte* directed that a different trial judge take over a case on

---

**3.** Canon 3(C) provides, in pertinent part:

(1) Judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where: (a) they have a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; (b) they served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law, served during such association as a lawyer concerning the matter, or the judge, or such lawyer has been a material witness concerning it; (c) they know that they, individually or as a fiduciary, or their spouse or minor child residing in their household, have a substantial financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding; (d) they, or their spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person: (i) is a party to the proceeding, or an officer, director or trustee of a party; (ii) is acting as a lawyer in the proceeding; (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; (iv) is to the judge's knowledge likely to be a material witness in the proceeding.

Code of Judicial Conduct Canon 3(C)(1) (spacing modified).

remand. "In this regard, Superior Court established a rule of judicial administration that in any recusal motion, a different judge would be required to rule on the motion, because the judge being asked to recuse could not objectively address the issue of his impartiality. We declare this procedure inappropriate and preclude its use." *Id.* at 1298. We found such direction to be an impermissible meddling into the administrative and supervisory functions of the Supreme Court, which oversees and supervises the conduct of all courts and members of the judiciary pursuant to Article V, Section 10(c) of our Constitution (which establishes that this Court "shall exercise general supervisory and administrative authority over all the courts and justices of the peace . . . ."). We also said that enforcement of the Rules of Judicial Conduct, effective January 1, 1974, and reported at 455 Pa. XXXIX, is beyond the jurisdiction of the Superior Court and to the extent that the Superior Court was attempting to interpret the Canons of Ethics, its interpretation was an "unwarranted intrusion[ ] upon this Court's exclusive right to supervise the conduct of all courts and officers of the judicial branch." *Reilly,* 489 A.2d at 1298.

In the case *sub judice,* the Superior Court took a step beyond that of the Superior Court in *Reilly;* namely, *Reilly* had a motion for recusal that was remanded to be addressed by another judge. Here, the Superior Court *sua sponte* removed Judge Maier where recusal had never been raised by the parties. As a general rule, "[t]he proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried. He may determine the question in the first instance, and ordinarily his disposition of it will not be disturbed unless there is an abuse of discretion." *Id.* at 1299. This is, in part, to allow the requested judge to state his or her reasons for granting or denying the motion and, as the allegedly biased party, to develop a record on the matter.

Moreover, despite Judge Maier's comments regarding Appellee deserving fifty years of imprisonment, we do not find an automatic abuse of discretion. Rather, this Court has held

that "a jurist who has made ... ill-advised comments does not necessarily abuse his or her discretion when he [or she] denies a motion for his or her disqualification." *Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 370 (1995). We have further stated:

The sentencing decision is of paramount importance in our criminal justice system, and must be adjudicated by a fair and unbiased judge. *Commonwealth v. Knighton,* 490 Pa. 16, 415 A.2d 9, 21 (1980). This means, a jurist who assess[es] the case in an impartial manner, free of personal bias or interest in the outcome. *Commonwealth v. Abu–Jamal,* 553 Pa. 485, 720 A.2d 79, 89 (1998). Because of the tremendous discretion a judge has when sentencing, a defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned. *Commonwealth v. Darush,* 501 Pa. 15, 459 A.2d 727, 732 (1983). A tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings. *In Interest of McFall,* 533 Pa. 24, 617 A.2d 707, 714 (1992). If a party questions the impartiality of a judge, the proper recourse is a motion for recusal, requesting that the judge make an independent, self-analysis of the ability to be impartial. *Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 370 (1995). If content with that inner examination, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. *Commonwealth v. Tharp,* 574 Pa. 202, 830 A.2d 519, 534 (2003) (quoting *Abu–Jamal,* 720 A.2d at 89). This assessment is a personal and unreviewable decision that only the jurist can make. *Id.* Once the decision is made, it is final.... *Travaglia,* 661 A.2d at 370 (quoting *Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291, 1300 (1985)).

This Court presumes judges of this Commonwealth are honorable, fair and competent, and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. *Commonwealth*

*v. White,* 557 Pa. 408, 734 A.2d 374, 384 (1999). The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion. *Darush,* 459 A.2d at 731.

*Commonwealth v. Druce,* 577 Pa. 581, 848 A.2d 104, 108 (2004) (alteration in original) (citations modified) (holding that speaking to the media in violation of Canon 3(A)(6) does not warrant a *per se* rule of recusal).

The comments made by Judge Maier clearly considered factors beyond the prior conviction. During the sentencing hearing, Judge Maier referenced the neighborhood and inability of its inhabitants to leave, other charges currently pending against Appellee, his history of trouble with the legal system, the nature of the area, and the like. (Reproduced Record at 191a–97a.) As such, the single comment was taken out of context by the Superior Court and does not warrant a *per se* recusal.

Ultimately, the *sua sponte* removal of the trial court judge on remand for sentencing exceeded the authority of the Superior Court. The parties are required to file a motion to recuse and for the judge in question to rule; his or her decision must stand absent an abuse of discretion. Consequently, we reverse this part of the decision of the Superior Court and remand it to Judge Maier for re-sentencing in accordance with the remainder of the Superior Court's Opinion.[4]

4. I respectfully disagree with the portion of the Concurring Opinion asserting that "the majority states that one of its reasons to remand today is to allow the judge to develop a written record when we declined to do so in *White.*" On page 389, 912 A.2d on page 835 of the instant Opinion we note that a motion for recusal should be addressed to the jurist whose recusal is being sought. This procedure allows "the requested judge to state his or her reasons for granting or denying the motion and, as the allegedly biased party, to develop a record on the matter." However, in this case no motion for recusal was ever filed. Accordingly, on remand to the trial judge there is to be no consideration of the motion for recusal, let alone development of a written record.

Justices CASTILLE, SAYLOR, EAKIN and BAER and Justice BALDWIN join the opinion.

Chief Justice CAPPY files a concurring opinion.

Chief Justice CAPPY concurring.

I join with the decision of the majority. I write separately as I find it remarkable that we would afford the judge in this case the opportunity to further develop the record concerning the request for recusal when we refused to extend that same courtesy to Judge Hughes in *Commonwealth v. White*, 910 A.2d 648 (Pa.2006) (Cappy, C.J., dissenting). I recognize that the case before us today is distinct, in that here the trial judge was given no opportunity, even orally, to respond to the allegations of bias. But I find it incongruous that the majority states that one of its reasons to remand today is to allow the judge to develop a written record when we declined to do so in *White*.