J-S01017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.T. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.W.T. | : | |
| | : | |
| Appellant | : | No. 2716 EDA 2019 |

Appeal from the Order Entered August 20, 2019,
in the Court of Common Pleas of Philadelphia County,
Domestic Relations at No(s):  No. 0C1500178.

BEFORE:   BOWES, J., KUNSELMAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED MARCH 30, 2020**

In this matter, Appellant A.W.T. appeals from the trial court's order, which denied her petition to relocate with the parties' six-year-old daughter, S.T. (Child), but granted, in part, the request of Appellee C.T. to modify custody.[1]  Because the court did not conduct a full hearing, we vacate the order and remand for further proceedings.

The record discloses the relevant factual and procedural history:

Child was born in June 2013.  Although the record is unclear whether the parties ever married, testimony revealed that they ended their relationship at some point in 2014.  Recent history began with the previous custody

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The parties, both women, were in a same-sex relationship when Child was born, and they are Child's legal parents.  The record indicates that A.W.T. is the biological mother of Child, and C.T. is the adoptive mother.

arrangement, which the parents entered into by consent order on August 16, 2018. The order provided primary custody to A.W.T. and partial physical custody to C.T. every other weekend from Friday to Sunday and alternate weekends from Friday to Saturday. The parties shared legal custody. The order further provided that the parties may change custody by mutual agreement.

In April 2019, A.W.T. filed a notice of a proposed relocation, seeking to move with Child from the Philadelphia area to North Chesterfield, Virginia, near Richmond. C.T. objected and filed the requisite counter-affidavit; she also filed a petition to modify the 2018 custody consent order. Subsequently, A.W.T. filed her own modification petition. The trial court consolidated the three pending petitions and held a hearing on August 20, 2019. Both parties appeared with counsel.

During the hearing, A.W.T. initiated her case-in-chief for relocation by her direct examination. A.W.T.'s testimony began with pertinent information regarding Child's current and previous custody arrangements and the potential benefits Child would receive if the court granted her request to relocate. A.W.T. testified that her current day job is with Verizon, but that she also assists women during labor as a doula.[2] She explained that the reason she sought relocation to Virginia is because she wants to advance her career as a midwife. According to A.W.T., it is illegal to be a lay midwife in

_____

[2] A doula is a person trained to provide advice, information, emotional support, and physical comfort to a mother before, during, and just after childbirth.

Pennsylvania, whereas in Virginia, she could obtain a certified professional midwife certificate without first having to become a registered nurse. **See** N.T., 8/20/19, at 12. A.W.T. also testified that she would have familial support in Virginia, including her fiancée, who already resides there. **Id.** at 26.

The court interjected throughout A.W.T.'s testimony. Most critically, the court asked A.W.T. whether Delaware, New Jersey, or Maryland have similar midwife programs to that of Virginia, the inference being that she could still advance her career without relocating Child. **Id.** at 42. A.W.T. explained that while those states did have a similar program, Virginia was unique for several reasons, including the fact that she would have a support network. **Id.** at 43.

The trial court then questioned A.W.T.'s motives directly. As A.W.T. attempted to explain why Virginia was a more suitable choice, the court ultimately stopped hearing A.W.T.'s case-in-chief and concluded that A.W.T.'s proposed relocation was "invalid" as it determined that A.W.T.'s true motivation was to be with her fiancée. **See** N.T., at 60, 65, 75, 76. A.W.T. did not present any other witnesses or evidence. C.T. did not cross-examine A.W.T., nor did C.T. take the stand.

The court immediately transitioned to C.T.'s petition to modify custody. But instead of hearing from witnesses or allowing the parties to present their evidence, the trial court essentially limited the modification portion of the proceeding to arguments from counsel. **See** N.T. at 76-87. The court then announced it would keep primary custody with A.W.T. **Id.** at 87-88. Thereafter, the court elicited further argument from the attorneys and asked

questions of the parents as it ironed out the finer details, including holiday and summer vacation. *Id.* at 88-94. The court announced that its order would be ready soon, and the court officer asked the parties to step out. *Id.* at 95. The custody order was issued the same day.

The order denied A.W.T.'s petition to relocate, kept primary custody with A.W.T., but adjusted the weekend schedule. C.T. was awarded partial custody every weekend, Friday afternoon to Monday morning, except for the third weekend, which belonged to A.W.T. Most drastically, the court divided the summer schedule in half, granting each parent six consecutive weeks of physical custody, which A.W.T. had proposed if relocation was granted.

The court did not delineate its reasons for its decision under either 23 Pa.C.S.A. § 5337(h) (relating to the relocation factors) or 23 Pa.C.S.A. § 5328(a) (relating to the custody factors). *See* 23 Pa.C.S.A. § 5323(d). Even after A.W.T. filed her timely notice of appeal, the court did not analyze the pertinent factors.

A.W.T. raises the following issues for our review, which we reorder for ease of disposition:

> 1. Where the court did not hold a full and complete hearing on the proposed relocation as required by 23 Pa.C.S.A. § 5337(g)(1) and Pa.R.C.P. 1915.17, did it abuse its discretion and commit legal error?
>
> 2. Where the trial court granted in the part [C.T.'s] petition to modify custody without holding a full and complete hearing on the custody petitions, did the trial court abuse its discretion and commit legal error?

3. Where the trial court failed to give proper weight to the evidence and testimony of the witnesses, did it abuse its discretion and commit legal error?

4. Where the trial court's opinion failed to delineate its findings with respect to the relocation factors in 23 Pa.C.S.A. § 5337(a), did it commit legal error?

5. Where the trial court's opinion fails to delineate its findings pursuant to the custody factors in 23 Pa.C.S.A. § 5328[,] did it abuse its discretion and commit legal error?

A.W.T.'s Brief at 4.

Our scope and standard of review of child custody orders are settled:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**S.T. v. R.W.**, 192 A.3d 1155, 1160 (PA. Super. 2018) (citation omitted).

Our review differs when an appellant presents a due process challenge:

A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary.

**Id.** (citations omitted).

A.W.T.'s first two issues pertain to the trial court's process, and thus we address those issues contemporaneously. A.W.T. contends that the trial court committed reversible error when it failed to conduct a full hearing on her relocation petition and the parties' cross-filed modification petitions. She alleges the court abruptly denied her relocation, in the middle of her direct examination and before she presented all of her evidence, without addressing all of the relocation and custody factors. Similarly, A.W.T. asserts that the court then granted, in part, C.T.'s petition for modification without conducting a full hearing.

It is well-settled that the trial court must consider all 10 relocation factors and all 16 child custody factors when making a decision on relocation that also involves a custody decision. *See A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013); *see also* 23 Pa.C.S.A. § 5337(h)(1-10); *and see* 23 Pa.C.S.A. § 5328(a)(1-16). Moreover, "[i]f a counter-affidavit regarding relocation is filed with the court which indicates the nonrelocating party objects either to the proposed relocation or to the modification of the custody order […], *the court shall modify the existing custody order only after holding a hearing* to establish the terms and conditions of the order pursuant to the relocation indicating the rights, if any, of the nonrelocating parties." 23 Pa.C.S.A. § 5337(f) (emphasis added). The trial court "shall hold an expedited *full* hearing on the proposed relocation after a timely objection had been filed and before the relocation occurs." *See* 23 Pa.C.S.A. § 5337(g)(1)(emphasis added).

In custody hearings, parents have at stake fundamental rights: namely, the right to make decisions concerning the care, custody, and control of their child. **S.T.**, 192 A.3d at 1160-1161 (citing **Troxel v. Granville**, 530 U.S. 57 (2000); **see also** U.S.C.A. Const. Amends. 5, 14; **and see generally D.P. v. G.J.P**., 146 A.3d 204 (Pa. 2016)).

Due process must be afforded to parents to safeguard these constitutional rights. "Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of her child." **S.T.**, 192 A.3d at 1161 (citing **J.M. v. K.W.**, 164 A.3d 1260, 1268 (Pa. Super. 2017) (*en banc*). Moreover, both notice and an **opportunity to be heard must be afforded at a meaningful time in a meaningful manner**. **Id.** at 1164 (emphasis original) (citation omitted). Without notice and an opportunity to be heard, a party cannot properly advocate his or her position, nor expose all relevant factors from which the finder of fact may make an informed judgment. **See id**. (citing **Everett v. Parker**, 889 A.2d 578, 580 (Pa. Super. 2005)). That said, due process is flexible and calls for such procedural protections as the situation demands. **Id.** at 1161.

The instant hearing addressed three petitions: A.W.T.'s relocation petition and the parties' respective modification petitions. In other words, the court was obligated to conduct a full hearing and analyze both the relocation factors under Section 5337(h) as well as the custody factors under Section

5328(a). Due process attached, and with it the mandate that each party have an opportunity to heard in a meaningful manner.

Examination of A.W.T.'s claims necessitates a *de novo* review of the cold transcript. In our review, we have discovered a lack of procedural due process. Throughout A.W.T.'s direct examination, the court frequently interjected. A certain level of interaction is entirely appropriate and necessary, especially when the court sits as the finder of fact and must manage the proceedings in the interest of judicial economy. Here, however, the court adopted an increasingly adversarial role.

For instance, A.W.T.'s testified that the proposed elementary school in Virginia has a farming program, which would provide a unique opportunity for Child, as Child has shown an interest in the birthing of farm animals. *See* N.T. at 36; *see also* 23 Pa.C.S.A. § 5337(h)(7) ("Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity"). The court interposed with its own knowledge of farm life, doubting that Child could be legitimately interested, and suspected that Child only told A.W.T. this interest because A.W.T. was involved with midwifery. *See* N.T. at 36-40.

In another instance, A.W.T. attempted to explain that she and Child moved back to her mother's home so Child could attend a better school and out of the "hustle and bustle of Philadelphia, because it is dangerous in Philadelphia." *Id.* at 64-65. The court interrupted:

| | |
|---|---|
| **The Court**: | Oh, please [...] Do not go down that road. [...] I have lived here for 30 years. [...] Nothing has happened to me, and I don't find the city of Philadelphia to be some dangerous, horrible place.  Oh yeah, there you – go ahead, roll your eyes. |

*Id.* at 65.

A.W.T. denied rolling her eyes.  The court stated that crime happens everywhere and alluded to the killing of a protester during a white supremacist rally in Charlottesville, Virginia.  The court then stated rhetorically, "I forgot, [A.W.T.'s] going to be in the elite Chesterfield County, as if somehow – that they wiped it clean of crime." *Id.* at 65-66.

At this point, the court revisited A.W.T.'s motivation for seeking relocation.  The court concluded that the A.W.T. was not credible, and that her real motivation for the propose relocation was A.W.T.'s desire to be with her fiancée:

| | |
|---|---|
| **The Court:** | All I'm saying is, at this point, I don't have any belief that you are relocating because you're doing it for career reasons.  I don't believe you, not based on what I just read, and not based on your own testimony.  It looks like your career moves are basically whatever is going to work to get you and your new partner down [in] Virginia. |

*Id.* at 66-67.

A.W.T. had already testified about her motivation.  *See* 23 Pa.C.S.A. § 5337(h)(8) ("The reasons and motivation of each party for seeking or opposing the relocation."); *see generally* N.T. at 12-16, 42-43, 46-58.  She

- 9 -

had explained that Virginia allows those with a certified professional midwife certificate direct entry into the field without first becoming a registered nurse. *Id*. at 55. A.W.T. had testified that she does not have this certificate, that she would have to complete a program to ascertain one, and that she already began a registered nurse program. These facts notwithstanding, A.W.T. testified that completion of a certified professional midwife program was still the fastest way she could enter the field. A.W.T. conceded that closer states, like New Jersey, Maryland, and Delaware, have similar programs to that of Virginia. *Id.* at 42. However, A.W.T. had testified that midwifery in these states poses a different set of problems, because a midwife's services are not covered by insurance, limiting the clientele to the affluent; A.W.T. intends to work primarily with lower income individuals and people of color. *Id.* at 42, 47. A.W.T. testified that Virginia offers insurance coverage. *Id.* at 47-48.

Furthermore, A.W.T. had also testified that Virginia is the best opportunity because her new career would require a necessary support system. *Id.* at 42-43. Presumably, A.W.T. would retain her job with Verizon while she completes the midwifery program (A.W.T. had testified that Verizon approved a transfer to Virginia and that the change of roles was a promotion). *Id.* at 30. She explained that her aunt, family friends, and other personal friends would live in close proximity to her proposed location in Virginia. *Id.* at 25. And, most critically for the court, A.W.T. had also testified that her fiancée lives there. *Id.* at 26.

When A.W.T. attempted to explain these nuances, in response to the court's inquires, the court hardly allowed A.W.T. to finish her sentences. *See id.* at 53-66. The court ultimately deemed this reason to be "not valid." *See* N.T. at 75; *see also id*. at 71.  Notwithstanding the court's statement, it was unclear whether the court found the entire proposed relocation to be invalid or whether the court found A.W.T.'s position on Section 5337(h)(8)(relating to motivation) to be unpersuasive:

| **The Court:** | She doesn't have to go to Virginia.  I'm not finding that to be a valid relocation.  I'm not finding that that is in the best interest of the child, because I think her motivation is not acting in the child's best interest. |
|---|---|

*Id.* at 75.

Although this exchange occurred during A.W.T.'s direct examination, C.T.'s counsel then immediately launched into her petition, without requesting to cross-examine A.W.T.:

| **C.T.'s Counsel:** | Your Honor, [C.T.] is requesting primary custody, regardless of the results of the relocation, just to be clear on our position. |
|---|---|

*Id.* at 75-76.

Counsel for A.W.T. felt compelled to respond:

| **A.W.T.'s Counsel:** | And our argument definitely would be that [C.T.] should not have primary custody of [Child]. |
|---|---|

*Id.* at 76.

Only then did the court state clearly that it was not going to grant the relocation and, in the same breath, proceeded to C.T.'s modification petition:

| | |
|---|---|
| **The Court:** | Ok. So, I'm not going to grant the relocation.  So, she doesn't want to give her primary.  I understand that.  She's been the primary for a while.  Is there any possibility of increasing the amount of time that [C.T.] is getting, over what she has now? |

*Id*.

Counsel for C.T. responded first, outlining the reasons C.T. sought primary custody. *Id.* at 76.  During this response, counsel for A.W.T. objected.  Neither the court nor C.T. waited to address the objection, and we cannot discern whether the objection concerned the court's process or whether the objection concerned opposing counsel's averment. *Id.* at 76-77.  Such was indicative of the haphazard process.

From this juncture onward, the court engaged in an informal dialogue with both the litigants and their respective counsels, eliciting their specific preferences on custody as the court made rapid decisions. *See id*. at 77-93.  Neither parent took the stand, and as far as we can tell, C.T. was never actually sworn in.  Just as the court terminated the relocation portion of the hearing, so did the court abruptly decide custody. *See id.* at 87-88.

In response to A.W.T.'s argument that she was deprived of a full hearing, the trial court explained that it denied A.W.T.'s proposed relocation, because A.W.T. brought it "solely for the purpose of pursuing a romantic

relationship with her new paramour." **See** T.C.O., 10/10/19, at 3.[3] Thus, the court determined that A.W.T. "failed to meet her burden regarding the proposed relocation" under 23 Pa.C.S.A. § 5337(i). **Id.** at 4. Notably, the court opines it reached this decision "[u]pon [A.W.T.] concluding her testimony[.]" **Id.** at 3. The court posits that, in any event, if A.W.T. desired to supplement the record, she forfeited her chance with her silence when the court asked if there was anything else before ending the proceedings. **Id.** at 5; **see also** N.T. at 95. Finally, the court concludes that the resulting modified custody order "occurred as a result of an agreement between the parties, which the [previous August 2018 custody] order permits." T.C.O. at 4-5.

C.T.'s argument tracks that of the trial court. She argues that A.W.T. failed to object to the denial of her relocation, and that A.W.T. waived her challenge to the custody modification because she agreed to the modified order. **See** C.T.'s Brief at 5-6. "At no point during the hearing did counsel for A.W.T. indicate that A.W.T. objected to the agreed modification. In fact, A.W.T. and her counsel were active participants in the negotiation of the agreement regarding custody modification." **Id.** at 6 (citation to the record omitted).

We disagree with C.T. and the trial court's portrayal of events. The characterization that A.W.T. finished her case-in-chief, or that she consented to the modified order, is supremely disingenuous. We conclude that A.W.T.

_____

[3] We observed that A.W.T. testified that she and her fiancée have been together for over two years and have known each other since A.W.T. was 14 years old. **See** N.T. at 26.

was not afforded an opportunity to be heard in a meaningful manner. *See S.T.*, *supra*. We disagree that A.W.T. waived this challenge for failing to preserve the issue by objection. For one, we note that A.W.T. did object, about some issue, but that objection went unheeded. As the testimony revealed, it would be impossible for a party to object to the lack of opportunity to be heard while being deprived of the same. We certainly do not agree with the court's depiction that A.W.T. concluded her testimony, so much as the court concluded it for her.

Given the incomplete hearing, we also disagree with the court's conclusion that A.W.T. failed to meet her burden for relocation. A party's motivation is, of course, a legitimate factor that the court must consider in its the relocation analysis. *See* 23 Pa.C.S.A. § 5337(h)(8). We also recognize that this Court defers credibility and weight determinations to the trial court. *See, e.g., C.M. v. M.M.*, 215 A.3d 588, 591 (Pa. Super. 2019). We cannot affirm the court's denial of relocation, however. Even if the trial court assigned dispositive weight to the motivation factor, the court prevented A.W.T. from presenting the rest of her case.[4]

_____

[4] For this reason, we need not address C.T.'s counterargument that the court actually considered all the relevant factors. We mention it here, however, for two reasons. First, we disagree that the court considered anything but A.W.T.'s motivation for relocation. Although the court did not delineate its reasons for its decision, pursuant to 23 Pa.C.S.A. § 5323(d), it appears from the court's Rule 1925(a) opinion that this was the sole factor. *See* T.C.O. at 4, 6, 8. Second, and more concerning, is C.T.'s use of creative license in her Brief. For instance, C.T. argues that "the court correctly considered that there is an established pattern of conduct by A.W.T. to thwart the relationship of the child and the other party[,]" pursuant to Section 5337(h)(5). *See* C.T.'s

Relocation aside, we must also address the court's process as it pertains to the modification of custody. C.T. argues A.W.T. waived her claim by engaging in the process of what she describes as a mediation. ***See*** C.T.'s Brief at 4. Similarly, the trial court concluded A.W.T. waived her claim by remaining silent when the court concluded the proceeding by asking if there was anything else. ***See*** N.T. at 95. Again, we do not agree with the assertion made by C.T. and the trial court that A.W.T. consented to the modified order. ***See*** C.T.'s Brief at 6; ***see also*** T.C.O. at 7. This is factually inaccurate. Nowhere does the order reference A.W.T.'s consent. Moreover, because the proceeding devolved from an evidentiary hearing into an oral argument, A.W.T. could no longer make proper objections. We also note that a certain point, a party cannot be expected to repeatedly voice its concerns without jeopardizing its position by further agitating the court. For instance, when the court decided to award six weeks of consecutive summer custody to each party, without input from A.W.T., her counsel raised the concern:

| | |
|---|---|
| **A.W.T.'s Counsel**: | Your Honor, I would – I would ask for there not be six weeks consecutive time. I think that's |

---

Brief at 12. But upon closer inspection, C.T. merely cites the portion of the transcript where the court noted that it read the parties' pre-trial memoranda. ***See*** N.T. at 9. C.T. concludes that because her pre-trial memorandum documented A.W.T.'s alleged efforts to thwart the relationship, and because the court read this pre-trial memorandum, then it follows that the court found the same. ***See*** C.T.'s Brief at 12. The court made no such finding, and C.T. comes dangerously close to misrepresenting the record to this Court. ***See also*** C.T.'s Brief at 11-12 (paraphrasing the testimony and stating that the court considered Child's preference under Section 5337(h)(4) even though the court did not interview Child).

|  |  | a lot of time for a six-year-old to be away from either parent. |
| --- | --- | --- |
| **The Court**: | | All right, well, you're overruled. |

N.T. at 92-93

Thus, we conclude that the court's process during the modification portion of the consolidated hearing also deprived A.W.T. an opportunity to be heard in a meaningful manner. The court was obligated to conduct a full hearing on the merits of these petitions. When it did not do so, the court inadvertently violated A.W.T.'s right to procedural due process and therefore committed reversible error. On remand, the court shall conduct a full hearing on A.W.T.'s proposed relocation and on both parties' respective petitions for modification.

To be clear, nothing in this decision should be construed as favoring or disfavoring either party's position on relocation or modification. The hearing was incomplete, so we refrain from commenting on A.W.T.'s final issues; namely, whether the court's determination of A.W.T.'s motivation was supported by the record and whether the court failed to delineate its reasons for the custody award, pursuant to 23 Pa.C.S.A. § 5323(d). We caution, however, that Section 5323(d) applies to cases involving custody **and** relocation. **A.V. v. S.T.**, 87 A.3d 818, 823 (Pa. Super. 2014) (emphasis added) (citation omitted).

As a final matter, we note that A.W.T. has not sought the trial court's recusal, and when no such request is made, this Court has no authority to

remove a trial judge. **See Commonwealth v. Whitmore**, 912 A.2d 827, 834 (Pa. 2006). Given our disposition and the fact that the trial court made specific credibility determinations, the court might consider for itself whether it still possesses the ability to be a neutral arbiter of this matter.

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Strassburger joins this memorandum.

Judge Bowes concurs in the result.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date:* *3/30/2020*