J-S66045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TAJI J. LEE, | : | |
| | : | |
| Appellant | : | No. 2005 MDA 2013 |

Appeal from the PCRA Order entered on April 23, 2012
in the Court of Common Pleas of Centre County,
Criminal Division, No(s):  CP-14-CR-0000333-2005;
CP-14-CR-0000334-2005; CP-14-CR-0000335-2005;
CP-14-CR-0000336-2005; CP-14-CR-0000793-2005

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　**FILED DECEMBER 23, 2014**

Taji J. Lee ("Lee"), *pro se*,[1] appeals from the Order dismissing his second Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").  ***See*** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court concisely set forth the relevant history underlying this appeal in its Opinion dated February 21, 2014 (hereinafter referred to as "Rule 1925(a) Opinion"), which we incorporate herein by reference.  ***See***

---

[1] On August 28, 2012, the PCRA court granted Lee's request to remove his PCRA counsel and proceed *pro se*.

Rule 1925(a) Opinion, 2/21/14, at 1-4.[2]   Ronald McGlaughlin, Esquire (hereinafter "Attorney McGlaughlin") represented Lee at trial and on direct appeal.

Following the entry of the PCRA court's October 28, 2013 Order "reinstat[ing Lee's] PCRA appeal rights in their entirety,"[3] Lee timely filed a *pro se* Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal.   In response, the PCRA court issued its Rule 1925(a) Opinion.

On appeal, Lee presents the following issues for our review:

1. Did the [PCRA] court err in failing to find [Attorney McGlaughlin] ineffective for failing to strike [a] biased juror?

2. Did the [PCRA] court err in failing to find [Attorney McGlaughlin] ineffective for erroneously advising [Lee] that he could not testify?

3. Did the [PCRA] court err in failing to find [Attorney McGlaughlin] ineffective for failing to litigate prosecutorial misconduct in withholding discovery documents?

4. Did the [PCRA] court err in failing to find [Attorney McGlaughlin] ineffective for failing to object [to] or challenge the propriety of [the] jury instruction for

---

[2] We observe that the PCRA court incorrectly states the date on which this Court affirmed Lee's judgment of sentence as January 16, 2009.  In fact, we affirmed the judgment of sentence on March 10, 2008.  **See Commonwealth v. Lee**, 953 A.2d 601 (Pa. Super. 2008) (unpublished memorandum).   The Pennsylvania Supreme Court subsequently denied allowance of appeal on December 17, 2008.  **See Commonwealth v. Lee**, 962 A.2d 1196 (Pa. 2008).

[3] The Commonwealth did not appeal from the Order reinstating Lee's appeal rights, *nunc pro tunc*.

entrapment, and for dismissing [this] claim without [a] hearing?

5. Did the [PCRA] court err in failing to find [Attorney McGlaughlin] ineffective for failing to properly develop [Lee's] entrapment issue on direct review, and for dismissing [this] claim without [a] hearing?

6. Did the [PCRA] court err in failing to find [Attorney McGlaughlin] ineffective for failing to correct the record on [direct] appeal?

7. Did the [PCRA] court err in failing to find [Attorney McGlaughlin] ineffective for failing to brief [the] issue of perjury suborned by [the] Commonwealth[, which issue was] raised in [Lee's Pa.R.A.P.] 1925(b) Statement [on direct appeal]?

8. Did the [PCRA] court err in failing to find [Attorney McGlaughlin] ineffective for failing to litigate [the issue of] prosecutorial misconduct in suborning perju[ry before the] grand jury, and [by] dismissing [this] claim without [a] hearing?

9. Did the [PCRA] court err in failing to find [Attorney McGlaughlin] ineffective for failing to properly frame and litigate [Lee's] recusal claim on direct review, and [by] dismissing [this] claim without [a] hearing?

10. Did the [PCRA] court err in failing to find [Attorney McGlaughlin] ineffective for failing to litigate [the issue of] prosecutorial misconduct by the [Commonwealth for] depriving [Lee] from calling witnesses thr[ough] threats of perjury charges, and [by] dismissing [this claim] without [a] hearing?

Brief for Appellant at 5-6 (capitalization omitted).[4]

The applicable standards of review regarding the dismissal of a PCRA petition and ineffectiveness claims are as follows:

---

[4] We note that, like Lee's Statement of Questions Presented, his appellate brief is voluminous, spanning 70 pages.

Our standard of review of a PCRA court's [dismissal] of a petition for post[-]conviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

\* \* \*

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted).

Lee first argues that Attorney McGlaughlin was ineffective for failing to seek the removal of one of the jurors who heard Lee's case, Jason Baney ("Baney"). ***See*** Brief for Appellant at 16-19. Lee points out that Baney had informed the trial court, during trial, that Baney's father worked at the Centre County Correctional Facility (where Lee was incarcerated at the time), which, Baney stated, caused him concern for his safety. ***Id.*** at 16 (citing N.T., 5/23/06, at 346-50). Lee additionally asserts that Baney was prejudiced against him because Baney (1) allegedly saw sheriffs escorting

Lee out of the courthouse in handcuffs;[5] and (2) heard a news story pertaining to Lee's case. **See** Brief for Appellant at 16, 17. According to Lee, "[h]ad [Attorney McGlaughlin] objected to the trial court[']s failure to not immediately decide [] Baney's partiality …, [] Baney could have been removed from the jury, or[,] upon the trial court[']s refusal to remove [] Baney, [Attorney McGlaughlin] could have motioned the court for a mistrial …." **Id.** at 19.

The PCRA court addressed this claim in its Rule 1925(a) Opinion, and correctly determined that Attorney McGlaughlin was not ineffective, since Lee had personally decided that he wanted to keep Baney on the jury. **See** Rule 1925(a) Opinion, 2/21/14, at 6-7; **see also** N.T., 5/25/06, at 1269-70 (wherein Attorney McGlaughlin informed the trial court judge, prior to deliberations, that "I have discussed it with my client, and … [Lee] did indicate, for the record, that he has no objection to [Baney] remaining as a … juror."). We affirm with regard to this issue based on the PCRA court's rationale. **See** Rule 1925(a) Opinion, 2/21/14, at 6-7.[6]

Next, Lee asserts that Attorney McGlaughlin was ineffective because he allegedly "advis[ed Lee] that he could not testify" at trial, ignoring Lee's repeated statements that he wanted to testify. Brief for Appellant at 20

---

[5] In actuality, Baney testified that Lee was *not* in handcuffs. **See** N.T., 5/23/06, at 345.

[6] As an addendum, we observe that Attorney McGlaughlin did, in fact, move for a mistrial after it was revealed that Baney saw Lee being escorted from the courthouse. **See** N.T., 5/23/06, at 339.

(capitalization omitted). According to Lee, "[Attorney McGlaughlin] interfered with [Lee's] right to testify in the form of advice so unreasonable, [that] counsel vitiated [Lee's] decision to testify by believing that he didn't have a choice." *Id.* at 21.

> Our Pennsylvania Supreme Court has explained that
>
> [t]he decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000) (citations omitted).

In its Rule 1925(a) Opinion, the PCRA court addressed Lee's ineffectiveness claim in this regard and properly rejected it. *See* Rule 1925(a) Opinion, 2/21/14, at 11-12. We agree with the PCRA court's rationale, which is supported by the record, and affirm on this basis with regard to this issue. *See id.*

In his third issue, Lee argues that Attorney McGlaughlin was ineffective for failing to raise on direct appeal a claim asserting prosecutorial misconduct regarding the Commonwealth's alleged failure to disclose exculpatory evidence to the defense. *See* Brief for Appellant at 25-30. Specifically, Lee contends that the Commonwealth failed to turn over a purported 2002 police "debriefing report" containing information from one of

the Commonwealth's key witnesses, Kenyon Ebeling ("Ebeling"), as to when she first met Lee and the time period during which Lee was selling drugs. *Id.* at 26. According to Lee, "[h]ad [Attorney McGlaughlin] received this document, there's a reasonable likelihood that it would have been the tip of the iceberg in [establishing Lee's] entrapment defense." *Id.* at 29.

The PCRA court addressed this claim in its Rule 1925(a) Opinion and correctly rejected Lee's contention that Attorney McGlaughlin was ineffective for not raising this claim on direct appeal. *See* Rule 1925(a) Opinion, 2/21/14, at 10-11. We affirm with regard to this issue based on the PCRA court's rationale. *See id.*

Next, Lee asserts that "the [PCRA] court erred in failing to find [Attorney McGlaughlin] ineffective for failing to object [to] and/or challenge the propriety of [the trial court's] jury instruction on entrapment, and not having an evidentiary hearing on [this] claim." Brief for Appellant at 30 (capitalization omitted); *see also id.* at 34 (wherein Lee states that he "pleads that the jury charge was not incorrect, but inadequate to clarify the confusion within the jury."). Lee points out that, during deliberations, the jury requested clarification regarding the entrapment instruction on three separate occasions. *Id.* at 30-31. According to Lee, "the trial court erred in failing to give an example of what entrapment consist[s] of, more than what it means. The juries [*sic*] returning and requesting the rereading of the entrapment instruction presumes confusion and need of clarity." *Id.* at 33.

In its Opinion and Order dated March 12, 2010, the PCRA court addressed this claim and determined that Attorney McGlaughlin was not ineffective because there is no merit to Lee's underlying challenge to the trial court's clarification of the jury instruction on entrapment. **See** Opinion and Order, 3/12/10, at 4-5. Because the PCRA court's analysis and determination is supported by the law, we affirm on this basis concerning Lee's instant ineffectiveness challenge. **See id.**; **see also Commonwealth v. Einhorn**, 911 A.2d 960, 975 (Pa. Super. 2006) (holding that a trial court's issuance of a jury instruction will only constitute reversible error where the court made an inaccurate statement of law).

In his fifth issue, Lee maintains that Attorney McGlaughlin was ineffective for (1) failing to establish an entrapment defense at trial; and (2) "not properly developing [an] entrapment claim on direct appeal." Brief for Appellant at 36, 37 (capitalization omitted). Although we have reviewed Lee's brief, we will not summarize herein Lee's voluminous argument in support of these claims. **See id.** at 36-43.

Initially, we observe that this Court, on direct appeal, thoroughly addressed Lee's entrapment defense claim and rejected it. **See Commonwealth v. Lee**, 953 A.2d 601 (Pa. Super. 2008) (unpublished memorandum at 8-11). Moreover, the PCRA court, in its Opinion and Order dated March 12, 2010, addressed Lee's challenge to Attorney McGlaughlin's effectiveness and rejected it. **See** Opinion and Order, 3/12/10, at 5-6. We

agree with the PCRA court's sound analysis and affirm on this basis concerning this issue. **See id.**[7]

In his sixth issue, Lee contends that Attorney McGlaughlin was ineffective for failing to correct a purported inaccuracy in the record in counsel's brief to this Court on direct appeal, which omission allegedly denied Lee meaningful appellate review. **See** Brief for Appellant at 43-45. Specifically, Lee contends that "[i]n the trial court's [Pa.R.A.P. 1925(a)] Opinion [issued in response to Lee's direct appeal], the trial court misstated the facts in rejecting [Lee's] entrapment claim. The trial court reasoned that the [confidential informant, Ebeling,] was not involved in any of the [narcotics] deliveries [of] which [Lee] was convicted." Brief for Appellant at 43 (internal citation omitted) (citing Trial Court Opinion, 1/9/07, at 6).[8] Lee maintains that this Court on direct appeal improperly relied upon the trial court's factual misstatement in this regard. **See** Brief for Appellant at 43; **see also Lee**, 953 A.2d 601 (unpublished memorandum at 11). According

---

[7] Moreover, because Lee's claim of Attorney McGlaughlin's ineffectiveness on direct appeal concerning the entrapment defense is predicated upon a layered claim of counsel's ineffectiveness in this regard at trial, this claim also fails.

[8] The trial court's Opinion stated, in relevant part, as follows:

> Lee's entrapment claim must fail first and foremost because [] Ebeling did not play any role in the charges for which [Lee] was convicted. [Lee] was found guilty only of hand-to-hand deliveries made directly to Agent Scott Merrill. Any impact [that] [] Ebeling's actions may have had on [Lee] was eliminated when [Lee] began dealing directly with Agent Merrill.

Trial Court Opinion, 1/9/07, at 6.

to Lee, "there is a strong probability that had the Superior Court had an accurate record of the facts surrounding [Lee's] entrapment claim, this claim would have prevailed." Brief for Appellant at 45.

The PCRA court thoroughly addressed Lee's sixth issue in its Rule 1925(a) Opinion, and rejected his ineffectiveness challenge, finding that any misstatement by either the trial court or this Court was inconsequential because Ebeling's testimony was not crucial to the Commonwealth's case, and there was more than ample evidence to convict Lee, even without any testimony from Ebeling. *See* Rule 1925(a) Opinion, 2/21/14, at 12-16. We affirm with regard to this issue based on the PCRA court's sound rationale, which is supported by the record. *See id.*

Next, Lee argues that the PCRA court erred by failing to find Attorney McGlaughlin ineffective for his failure to argue, on direct appeal, that Ebeling had committed perjury at trial,[9] despite having originally raised this matter in Lee's Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal. *See* Brief for Appellant at 46-52. According to Lee, Attorney McGlaughlin's "[o]mitting this meritorious issue lacks any reasonable basis or strategic foundation[,] … and a competent attorney would not have committed such an omission. The [C]ommonwealth knew [that] [] Ebeling was testifying falsely and allowed such testimony to continue without correction[.]" *Id.* at 51.

---

[9] Lee exhaustively sets forth his allegations of Ebeling's allegedly perjured testimony in his brief. *See* Brief for Appellant at 49-51.

In its Rule 1925(a) Opinion, the PCRA court addressed Lee's ineffectiveness claim in this regard, as well as Lee's underlying claim of Attorney McGlaughlin's failure to object to Ebeling's allegedly false testimony at trial, and properly rejected these claims. **See** Rule 1925(a) Opinion, 2/21/14, at 8-10. We agree with the PCRA court's rationale, which is supported by the record, and affirm on this basis with regard to this issue. **See id.**[10]

In his eighth issue, Lee argues that the PCRA court should have found that Attorney McGlaughlin was ineffective for failing to litigate prosecutorial misconduct, which allegedly occurred at Lee's grand jury proceedings. **See** Brief for Appellant at 52-57; **see also id.** at 56 (wherein Lee alleges that he "was indicted based upon the falsified testimony presented knowingly and willingly by the [C]ommonwealth through several witnesses to the grand jury."). Specifically, Lee asserts that both Ebeling and a police officer involved in the investigation of Lee's case, Detective Ferron, gave perjured testimony, which Attorney McGlaughlin should have addressed. **See id.** at

---

[10] Like the PCRA court, we determine that Attorney McGlaughlin articulated a reasonable basis for his decision to not include a challenge to the veracity of Ebeling's trial testimony among the seven separate allegations of trial court error that he argued in Lee's direct appeal. **See Commonwealth v. Lesko**, 15 A.3d 345, 380 (Pa. 2011) (stating that, "[g]enerally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests.") (citation omitted); **Commonwealth v. Puksar**, 951 A.2d 267, 277 (Pa. 2008) (stating that "[a] claim of ineffectiveness cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued.").

53 (claiming, *inter alia*, that (a) "Ebeling testified falsely about dates, [and] fabricated incidents, places, homicides, and [Lee having] assault[ed] her[;]" and (b) "Detective Ferron testified to information from uncorroborated informants, [and] to alleged incidents as 'facts' that were later refuted by the people claimed to have been involved.").

On direct appeal, this Court addressed and rejected Lee's underlying claim of prosecutorial misconduct, as it pertained to the allegedly false grand jury testimony of Ebeling and Detective Ferron. **See Lee**, 953 A.2d 601 (unpublished memorandum at 6-8); **see also** Opinion and Order, 3/12/10, at 6 (wherein the PCRA court noted, for the purpose of Lee's instant ineffectiveness challenge, that the underlying claim of prosecutorial misconduct was rejected by this Court). Accordingly, because this Court has already rejected Lee's underlying claim, his challenge to Attorney McGlaughlin's effectiveness predicated upon the underlying claim must fail. **See Franklin, supra** (stating that a claim of ineffectiveness will fail if the underlying legal claim lacks arguable merit).

In his ninth issue, Lee argues that the PCRA court erred in failing to find Attorney McGlaughlin to be ineffective for his failure to adequately frame and develop, on direct appeal, Lee's claim that the trial court judge who presided over Lee's preliminary hearing and trial, the Honorable Bradley P. Lunsford, should have recused himself from the case. **See** Brief for

Appellant at 57-61.[11] According to Lee, there were "legitimate reasons for the recusal of Judge Lunsford, from the Judge[']s possession of information regarding [Lee's] case pre-trial from his capacity as a district magistrate, to the altercation between Judge Lunsford and [Lee] during arraignment, to the comments made by Judge Lunsford while campaigning regarding [Lee], and his intentions to be tuff [*sic*] on drug offenders[.]" *Id.* at 59-60.

The PCRA court addressed and rejected this ineffectiveness challenge in its Opinion and Order dated March 12, 2010, and concluded that Attorney McGlaughlin properly developed and briefed the underlying claim on appeal. *See* Opinion and Order, 3/12/10, at 3-4. We agree with the PCRA court's analysis, and affirm on this basis in rejecting Lee's instant ineffectiveness challenge. *See id.*

In his tenth issue, Lee contends that Attorney McGlaughlin was ineffective for failing to raise on direct appeal a claim asserting prosecutorial misconduct regarding the Commonwealth's alleged intimidation of witnesses in efforts to prevent them from testifying at Lee's trial. *See* Brief for Appellant at 61-68; *see also id.* at 63 (arguing that Attorney McGlaughlin erred by originally raising this claim of prosecutorial misconduct in Lee's Rule

---

[11] Attorney McGlaughlin did, in fact, argue on direct appeal that Judge Lunsford erred in failing to recuse himself, which claim this Court rejected. *See Lee*, 953 A.2d 601 (unpublished memorandum at 5-6). In the instant appeal, Lee challenges the adequacy of Attorney McGlaughlin's framing and development of the recusal claim. *See, e.g.*, Brief for Appellant at 60 (arguing that "[c]ounsel should have framed the issue as [Judge Lunsford] erred in failing to recuse himself from the recusal hearing, and for testifying from the bench over objection, after the trial court denied [the] motion for recusal.").

1925(b) Concise Statement, but then abandoning the issue on direct appeal before this Court).

In its Opinion and Order, the PCRA court determined that Lee waived his underlying prosecutorial misconduct challenge because he failed to raise it on direct appeal. **See** Opinion and Order, 3/12/10, at 7 (citing **Commonwealth v. Rollins**, 738 A.2d 435, 441 (Pa. 1999) (holding that a claim of prosecutorial misconduct must be raised on direct appeal or it is waived)). Concerning Lee's challenge to Attorney McGlaughlin's effectiveness in this regard, Lee fails to cite to any evidence of record to support his bald allegation that the Commonwealth committed the egregious act of intimidating witnesses from testifying on behalf of the defense. Accordingly, Lee's final claim of Attorney McGlaughlin's ineffectiveness does not entitle him to relief.

Finally, after reviewing the claims presented in Lee's two *pro se* Responses to the Commonwealth's Motions to Dismiss Lee's PCRA Petitions, we conclude that the PCRA court properly determined that none of these claims entitles Lee to collateral relief.

Accordingly, we conclude that the PCRA court neither abused its discretion nor committed an error of law by dismissing Lee's second PCRA Petition, and we therefore affirm the Order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2014



IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,       )
                                    )
    Respondent              )
                                    )
    vs.                     )    NO. 2005-793
                                    )    NO. 2005-333
TAJI J. LEE,                        )    NO. 2005-334
                                    )    NO. 2005-335
    Petitioner              )    NO. 2005-336

*Attorney for Commonwealth:*    *William R. Stoycos, Esq.*
*Attorney for Defendant:*    *Tami Fees, Esq.*

**Lunsford, J.**

### OPINION and ORDER

### BACKGROUND

On May 25, 2006, Taji J. Lee, Petitioner, was convicted of twenty-six (26) counts of drug related offenses. On July 16, 2006, he was sentenced in accordance with the applicable mandatory minimum sentences and standard range sentencing guidelines. He was ordered to serve the sentences consecutively, for an aggregate sentence of thirty (30) to sixty (60) years. On July 7, 2006, Petitioner filed Post Sentence Motions. On November 7, 2006, he filed Supplemental Post Sentence Motions. On November 22, 2006, this Court issued an Order denying the Post Sentence Motions. On December 7, 2006, Petitioner filed a Notice of Appeal to the Superior Court of Pennsylvania. On January 16, 2009, the judgment of sentence was affirmed by the Superior Court of Pennsylvania. On the same day, a Petition for Allowance of Appeal was denied by the Supreme Court of Pennsylvania. On March 27, 2009, Petitioner filed a *pro se* PCRA Petition. Counsel was appointed for Petitioner. On May 27, 2009, Petitioner filed a counseled Amended PCRA Petition raising thirteen (13) grounds for relief. On September 16, 2009, the Commonwealth filed a Brief in Response to Defendant's Amended Counseled PCRA claims. On October 15, 2009, the Commonwealth filed a Motion to Dismiss without Evidentiary



Hearing specifically seeking dismissal of claims 3, 4, 5, 6, 9 and 13. On October 23, 2009, this Court entered an Order requiring Petitioner to file a response to the Motion to Dismiss. On November 13, 2009, counsel for Petitioner requested (via e-mail) a ten (10) day extension to file a response which this Court granted. No further extensions were requested. On February 10, 2010, the Commonwealth filed a Motion for Disposition of the Motion to Dismiss. To date, Petitioner has not filed a response to the Commonwealth's Motion to Dismiss.

## DISCUSSION

A court shall dismiss a PCRA petition without a hearing with the petition fails to comply with the mandatory pleading requirements set forth in the PCRA statute and the Pennsylvania Rules of Criminal Procedure. *Commonwealth v. Rivers*, 786 A.2d 923 (Pa. 2001). A Court may deny a PCRA claim without a hearing where: (1.) there are no issues concerning any material fact; (2.) defendant is not entitled to relief as a matter of law; and, (3.) no purpose would be served by further proceedings. Pa.R.Crim.P. 907(1); *Commonwealth v. Morrison*, 878 A.2d 102, 105 (Pa. Super. 2005). Furthermore, a court may dismiss a PCRA claim even where genuine issues of material fact exist, if the court determines the filing is "patently frivolous" or that the facts alleged would not, even if true, entitle defendant to relief under the law. Comment to Pa.R.Crim.P. 907. Given Petitioner's failure to respond to the Motion to Dismiss and upon thorough review and consideration of the Motion to Dismiss PCRA claims, this Court determines dismissal of PCRA claims 3, 4, 5, 6, 9 and 13 is appropriate.

In claims 3, 4, 5, 6, and 9, Petitioner argues ineffective assistance of counsel. The Pennsylvania Supreme Court has set forth the following test for ineffectiveness of counsel:

> [t]he constitutional ineffectiveness standard requires the defendant to rebut the presumption of professional competence by demonstrating that (1.) his underlying claim is of arguable merit; (2.) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3.) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been

2

> different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

*Commonwealth v. Reeves*, 923 A.2d 1119, 1127 (Pa. 2007). To make a successful claim of ineffective counsel, a defendant must plead and prove that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Reaves*, 923 A.2d at 1127 *citing Strickland v. Washington*, 466 U.S. 668 (1984). When assessing an attorney's performance the court must look "both to the arguable merit of the claim lodged against counsel as well as the objective reasonableness of the path taken, or not taken by counsel." *Reaves*, 923 A.2d at 1127. When evaluating prejudice, a court must ask whether the defendant has proven that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.

Regarding claim 3, Petitioner alleged his appellate counsel failed to properly frame and develop Petitioner's argument regarding recusal of the trial judge. The trial judge was a Magisterial District Judge prior to being elected to the bench of the Centre County Court of Common Pleas. Petitioner complained that because the trial judge, in his former role as Magisterial District Judge, arraigned Petitioner, he had "intimate knowledge" of Petitioner's case. Petitioner contends his appellate counsel should have argued that recusal of the trial judge was required because of Petitioner's "verbal altercation" with the trial judge on March 31, 2005 and the trial judge's "improper testifying from the bench" during the hearing on the Motion for Recusal. This Court agrees with the Commonwealth, the only reference for the alleged verbal altercation is "NT; 5/3/06, pg. 8." The record reflects no verbal altercation between the trial court and Petitioner.

This Court believes Petitioner is referring to his bail hearing which would have occurred on or about March 31, 2005. However, this issue has been argued by Petitioner's counsel. At the May 3, 2006, hearing on the Motion for Recusal, Petitioner's counsel argued the trial judge

3

should recuse because statements were made at the bail hearing that Petitioner's drug-related conduct resulted in two (2) deaths and because Petitioner owned properties, bail should be set high. Tr. Motion for Recusal, 5/3/06, pp. 1-8. This Court did not recall these statements although it recognizes the information was most likely proffered. Tr. Motion for Recusal, 5/3/06, pp. 1-8. However, after careful self-assessment, this Court determined it was able to fairly and impartially apply the law in this case. This issue was developed and argued by Petitioner's counsel. The arguments appear on the record. Furthermore, this issue was raised on direct appeal and the Pennsylvania Superior Court found no abuse of discretion and noted this Court's lack of bias was supported by the record. Moreover, review of the record does not reflect any "improper testimony from the Court" at the hearing on the Motion for Recusal. *See* Tr. Motion for Recusal, 5/3/06.

In PCRA claim 4, Petitioner alleged his trial counsel was ineffective for failing to request the trial judge recuse himself from the hearing that was conducted on the Motion for Recusal. As the Commonwealth correctly notes, a motion to recuse is first properly addressed to the judge whose recusal is sought. *Commonwealth v. Whitmore*, 912 A.2d 827, 833 (Pa. 2006). Furthermore, a judge whose recusal is sought is not required to turn the matter over to a different judge for disposition. See id. at 832-33 *citing Reilly v. Southwest Pa. Trans. Auth.*, 507 Pa. 204, 489 A.2d 1291 (Pa. 1985).

In PCRA claim 5, Petitioner alleged his trial counsel was ineffective for failing to object to and challenge the propriety of the jury instruction given on entrapment. The parties do not dispute that the trial court re-read the initial instruction regarding entrapment after the jurors asked for clarification. The parties do not dispute the trial court inquired following the third instruction whether any juror still needed clarification. A trial court is permitted to respond by recharging the jury on the point in question by reading a standard jury instruction. *See Commonwealth v. Faulker*, 528 Pa. 57, 595 A.2d 29 (1991), *Commonwealth v. Davalos*, 779

4

A.2d 1190 (Pa. Super . 2001). Petitioner does not argue this Court issued an incorrect statement of the law regarding entrapment. It is not improper to inquire whether jurors need clarification following answering a question of the jury. *See Davalos*, 779 A.2d 1190.

Regarding PCRA claim 6, Petitioner alleged his trial counsel failed to develop the entrapment defense. Petitioner averred his "entire defense was entrapment and proving the 'Government Outrageousness' that constituted entrapment." Motion for Post Conviction Collateral Relief, 3/27/2009, p. IV. Petitioner argued the Commonwealth committed entrapment through its use of the confidential informant, Kenyon Ebeling, to arrange controlled buys. Petitioner and Ms. Ebeling were involved romantically and have a son together. Petitioner complained his counsel failed to (a.) effectively argue that the confidential informant's conduct constituted entrapment; (b.) cite to portions of the record in support of the entrapment argument contained in his brief; (c.) argue that confidential informant's drug trafficking is the type of conduct the entrapment statute is designed to prevent; and, (d.) raise the fact that the confidential informant committed "gross misconduct" by providing two firearms to Petitioner despite her knowledge that he was convicted a felon and under criminal investigation.

Petitioner's argument that his counsel failed to effectively argue that Ms. Ebeling's conduct constituted entrapment amounts to nothing more than a complaint his counsel did not succeed. This Court agrees with the Commonwealth; failure to succeed does not establish that counsel's performance was unreasonable or constitutionally defective. *Commonwealth v. Ligons*, 971 A.2d 1125, 1155 (Pa. 2009). Petitioner's second argument is that his counsel failed to cite the record in support of his argument. Petitioner is referring to the Superior Court Opinion filed on March 10, 2008. On page ten (10) of the Opinion, the Superior Court notes that Petitioner failed to provide citations on the record in support of his attack on Ms. Ebeling's credibility and allegations that she "engaged in significant drug trafficking." However, Petitioner provides no citations to the record in support of his allegations that she "engaged in significant

5

drug trafficking." Petitioner cited the record where Ms. Ebeling admitted to using and overdosing on drugs and "aiding in the selling of drugs." However, Petitioner does not cite any portions of the record regarding Ms. Ebeling being engaged in significant drug trafficking. This Court is not aware of any such evidence on the record.

Petitioner's third argument is that his counsel failed to argue Ms. Ebeling's drug trafficking is the type of conduct the entrapment statute is designed to prevent. However, Petitioner's counsel did make this argument. *See* Defendant's Brief on Appeal to the Pennsyvlanaia Superior Court, p. 69-72. Regarding Petitioner's fourth argument that his counsel failed to raise the fact that Ms. Ebeling committed "gross misconduct" in providing two (2) guns to Petitioner who was a convicted felon under investigation, this issue is not relevant to Petitioner's entrapment defense. *See Commonwealth v. Clark*, 683 A.2d 901 (Pa. Super. 1996).

In PCRA claim 9, Petitioner claimed his trial counsel was ineffective for failing to litigate prosecutorial misconduct in connection with perjured testimony during the relevant grand jury proceedings. This issue has been raised at the trial court and appellate stages by Petitioner. As the Commonwealth notes, the Superior Court affirmed this Court's determination that alleged irregularities in the grand jury proceeding would not be litigated and the Commonwealth's trial witnesses could be cross-examined at trial regarding prior inconsistent statements. Furthermore, as the Commonwealth has argued, pursuant to 42 Pa.C.S.A. § 4551 et. seq., the supervising judge appointed by the Pennsylvania Supreme Court to preside over the grand jury determined the sufficiency of a presentment. Judge Feudale, Supervising Judge of the Twenty-first Statewide Investigating Grand Jury has already reviewed Presentment No. 66 and determined it to be in accord with the law and accepted pursuant to the Investigating Grand Jury Act. *See id.*

For the above reasons, this Court determines PCRA claims 3, 4, 5, 6 and 9 should be dismissed without hearing. Petitioner has failed to prove that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Commonwealth v.*

6

*Reaves*, 923 A.2d 1119 (Pa. 2007). In each of these claims, there are no issues concerning any material fact, Petitioner is not entitled to relief as a matter of law and, no purpose would be served in conducting further proceedings. *See* Pa.R.Crim.P. 907(1); *Commonwealth v. Morrison*, 878 A.2d 102 (Pa.Super. 2005).

In PCRA claim 13, Petitioner alleged the Commonwealth engaged in prosecutorial misconduct in connection with the testimony of Sarah Voita. Specifically, Petitioner claims "[c]ounsel agreed with the prosecution instead of arguing in defendant's favor, that the stratergy [*sic*] of the prosecutor in offering Ms. Voita immunity to testify for the state, then holding a side bar with Ms. Voita's counsel about her pleading the 5[th] when called by the defense, went to the heart of the misconduct of the prosecutor." Motion for Post Conviction Collateral Relief, 3/27/2009, p. X. Petitioner did not raise this issue on direct appeal. Issues of trial court error and prosecutorial misconduct that are not raised on direct appeal are waived for purposes of a PCRA petition. *Commonwealth v. Rollins*, 738 A.2d 435 (Pa. 1999). Therefore, this issue involving the prosecutor's alleged misconduct for its refusal to grant immunity has been waived because it was not raised on direct appeal. *Id.*, 42 Pa.C.S.A.§ 9544(b).

Accordingly, the following Order is entered:

7

## ORDER OF COURT

AND NOW, this __12th__ day of March, 2010, upon consideration of the Commonwealth's Motion to Dismiss PCRA Claims and Motion for Disposition of the Motion to Dismiss PCRA claims, having received no response from Defendant pursuant to the Order on October 23, 2009, said Motion to Dismiss PCRA Claims is hereby GRANTED and claims 3, 4, 5, 6, 9 and 13 are DISMISSED from the amended PCRA Petition.

BY THE COURT:

_____
Bradley P. Lunsford, Judge

8

IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,    )

    )

   Respondent    )

    )

   vs.    )  NO. 2005-793

    )  NO. 2005-333

TAJI J. LEE,    )  NO. 2005-334

    )  NO. 2005-335

   Petitioner    )  NO. 2005-336

*Attorney for Commonwealth:*    *William R. Stoycos, Esq.*

*Attorney for Defendant:*    *pro se*

*Lunsford, J.*

## OPINION REGARDING MATTERS COMPLAINED OF ON APPEAL

## BACKGROUND

On May 25, 2006, Taji J. Lee, Petitioner, was convicted of twenty-six (26) counts of drug related offenses. On July 16, 2006, he was sentenced in accordance with the applicable mandatory minimum sentences and standard range sentencing guidelines. He was ordered to serve the sentences consecutively, for an aggregate sentence of thirty (30) to sixty (60) years. On July 7,

2006, Petitioner filed Post Sentence Motions. On November 7, 2006, he filed Supplemental Post Sentence Motions. On November 22, 2006, this Court issued an Order denying the Post Sentence Motions. On December 7, 2006, Petitioner filed a Notice of Appeal to the Superior Court of Pennsylvania. On January 16, 2009, the judgment of sentence was affirmed by the Superior Court of Pennsylvania. On the same day, a Petition for Allowance of Appeal was denied by the Supreme Court of Pennsylvania.

Moving on to the PCRA phase, On March 27, 2009, Petitioner filed a *pro se* PCRA Petition. Counsel was appointed for Petitioner. On May 27, 2009, Petitioner filed a counseled Amended PCRA Petition raising thirteen (13) grounds for relief. On September 16, 2009, the Commonwealth filed a Brief in Response to Defendant's Amended Counseled PCRA claims. On October 15, 2009, the Commonwealth filed a Motion to Dismiss without Evidentiary Hearing, specifically seeking dismissal of claims 3, 4, 5, 6, 9 and 13. On October 23, 2009, this Court entered an Order requiring Petitioner to file a response to the Motion to Dismiss. On November 13, 2009, counsel for Petitioner requested (via e-mail) a ten (10) day extension to file a response which this Court granted. No further extensions were requested. On February 10, 2010, the Commonwealth filed a Motion for Disposition of the Motion to Dismiss. The Court dismissed PCRA

2

claims 3, 4, 5, 6, 9 and 13 via Opinion and Order entered on March 12, 2010.

Upon thorough review and consideration of the remaining PCRA claims, and following the evidentiary hearing on January 31, 2012, this Court dismissed the remaining PCRA claims: 1, 2, 7, 8, 10, 11 and 12 via Order entered on April 23, 2012. The record remained open for thirty (30) days following the evidentiary hearing per the Commonwealth's request so that the Commonwealth could potentially supplement the evidence with the testimony of Assistant Attorney General, David Gorman, and counsel for Petitioner's request that she be permitted some time to attempt to locate Kenyon Ebeling and potentially call her as a witness. Tr. 1/31/12 pp. 201-202. However, the record was never supplemented after more than thirty (30) days had passed. Petitioner claims he did not receive a copy of this Court's Order entered on April 23, 2012 dismissing the remaining claims, despite the Centre County Prothonotary having mailed the same. He also contends his court-appointed counsel did not notify him of the entry of the Order. Only through his own efforts in contacting the Centre County Prothonotary did he learn of the Court's Order. He further complains that despite his wishes, his court appointed-counsel did not appeal and any appeal he could have filed after learning of the decision would have been untimely.

On August 10, 2012, Petitioner filed a Notice of Appeal to the Superior Court from the April

3

23, 2012 Order dismissing his remaining PCRA claims. On September 26, 2012, the Superior Court quashed the appeal as untimely. The Supreme Court denied Lee's Petition for Allowance of Appeal on April 8, 2013.

On January 17, 2013, Petitioner filed a second PCRA Petition. On July 12, 2013, the Commonwealth filed a Motion to Dismiss Pro Se Second PCRA Petition for Lack of Jurisdiction and corresponding brief. On August 7, 2013, Petitioner filed a Response to the Commonwealth's Motion to Dismiss. On October 28, 2013, this Court reinstated Petitioner's PCRA rights following an evidentiary hearing on October 18, 2013. Petitioner had thirty (30) days to appeal to the Superior Court, and on November 6, 2013, Petitioner filed a timely Notice of Appeal to the Superior Court presently before the court. In his Notice of Appeal, Petitioner raises ten (10) issues which are largely repetitive of the issues raised in his Amended PCRA.

This Opinion will address this Court's reasoning for dismissing the remaining claims from the Amended PCRA following evidentiary hearing on January 31, 2012. As discussed above, many claims were dismissed without hearing in the Opinion and Order entered on March 12, 2010 and this Court relies on that Opinion regarding those claims.

The claims remaining from Petitioner's Amended PCRA Petition involving ineffective

4

assistance of counsel following the Opinion and Order entered on March 12, 2010 were as follows:

Issue 1: failure to strike Juror Baney for cause;

Issue 2: failure to litigate the issue of a biased juror on direct appeal;

Issue 7: failure to object to testimony of Kenyon Ebeling because it constituted perjury;

Issue 8: failure to argue on appeal that Kenyon Ebeling committed perjury at trial;

Issue 10: failing to litigate the issue of prosecutorial misconduct in the Assistant Attorney General withholding discovery documents;

Issue 11: advising Defendant to waive the right to testify at trial; and

Issue 12: failing to correct "statements" made by trial court and Superior Court that the confidential informant was not involved in any drug deliveries for which Defendant was convicted.

## DISCUSSION

Petitioner argues ineffective assistance of counsel. The Pennsylvania Supreme Court has set forth the following test for ineffectiveness of counsel:

[t]he constitutional ineffectiveness standard requires the defendant to rebut the presumption of professional competence by demonstrating that (1.) his underlying claim is of arguable merit; (2.) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3.) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

*Commonwealth v. Reeves*, 923 A.2d 1119, 1127 (Pa. 2007). To make a successful claim of

ineffective counsel, a defendant must plead and prove that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Reaves*, 923 A.2d at 1127 *citing Strickland v. Washington*, 466 U.S. 668 (1984). When assessing an attorney's performance the court must look "both to the arguable merit of the claim lodged against counsel as well as the objective reasonableness of the path taken, or not taken by counsel." *Reaves*, 923 A.2d at 1127. When evaluating prejudice, a court must ask whether the defendant has proven that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

Regarding Issue 1, Petitioner claims that his counsel was ineffective for failing to strike a juror, "Juror Baney," for cause. During the trial, Juror Baney expressed to the Court that his father worked at the Centre County Correctional Facility and indicated this made him nervous. Tr. 5/23/06, pp. 347-349. Trial counsel testified that he could not have struck Juror Baney for cause during jury selection because he did not bring up the fact that his father worked at the correctional facility until the trial. Tr. 1/31/12, p. 86; Tr. 5/23/06, p. 347. There were a few discussions between the attorneys and trial judge regarding Juror Baney on the record. Juror Baney brought up the fact that his father worked at the correctional facility. Tr. 5/23/06, pp. 346-352. He was

6

asked questions to determine if he saw Petitioner leaving the courthouse handcuffed because Petitioner thought he did and expressed concern that it could prejudice the juror. Tr. 5/23/06, pp. 335, 345-346. However, Juror Baney indicated that he saw Mr. Lee leaving the courthouse but described him as free. Id. Juror Baney also advised the trial judge that he inadvertently heard of a news story raising whether Petitioner had any connection to the disappearance of Ray Gricar, former District Attorney. Tr. 5/23/06. 491-494. The juror was questioned regarding his ability to keep an open mind and be fair and impartial and advised that he must advise the trial judge if he was unable to be fair and impartial. The trial judge reserved the decision concerning Juror Baney remaining on the jury panel until the end of the trial,Tr. 5/23/06, p. 352. Ultimately, trial counsel for Petitioner advised the Assistant Attorney General and trial judge on the record that Petitioner decided to keep the Juror Baney on the jury. Tr. 5/25/06, pp. 1269-1272. This Court dismissed this claim because the record reflects that trial counsel gave meaningful attention and consideration to this issue and Petitioner was responsible for the decision to keep Juror Baney on the jury.

In Issue 2, Petitioner claims his counsel was ineffective for failing to litigate the issue of Juror Baney being biased on appeal. As discussed above, Petitioner choose to have Juror Baney remain; to later claim on direct appeal that he was biased would not have been a successful

7

argument as expressed by appeal counsel. Tr. 1/31/12, p. 16. His trial attorney indicated that since it was Petitioner's desire that Mr. Baney remain on the jury he did not raise it on appeal because he felt it was a non-issue from a practical standpoint. Tr. 1/31/06, p. 16. Furthermore, there is always the consideration that counsel must focus the appeal issues to the key issues most likely to succeed before the appellate court. Petitioner's appeal counsel raised seven (7) issues and indicated that he was well aware that raising more issues would have been detrimental to the success of the appeal Tr. 1/31/12, pp. 29-30. This Court dismissed this claim because counsel on appeal had a reasonable basis for his course of action and agrees raising this issue on appeal would have been quite unlikely to have produced a different outcome.

In Issue 7, Petitioner complains counsel failed to object to the testimony of Kenyon Ebeling because it constituted perjury. Trial counsel discussed at length his thoughts concerning Ms. Ebeling's testimony at the evidentiary hearing on January 31, 2012. He had expressed to Petitioner that there is a significant difference between inconsistent statements and perjury. Tr. 1/31/12, pp. 91-92. Trial counsel impeached Ms. Ebeling with prior inconsistent statements from her grand jury testimony. Tr. 1/31/12, pp. 23-24. There was not, however, basis to object to Ms. Ebeling's testimony as perjured during the trial. Tr. 1/31/12, p. 92. However, the inconsistencies were

8

relatively inconsequential. Tr. 1/31/12, p. 24. Trial counsel did attempt to attack Ms. Ebeling's testimony of the grand jury as perjurious in a pre-trial motion. Tr. 1/31/12, pp. 88-89. He agreed that he attempted to "hammer" her on cross-examination and tried to point out those inconsistent statements through the grand jury transcript and other statements she made to police. Tr. 1/31/12, pp. 89-90. Trial Counsel testified that he addressed any inconsistencies to Ms. Ebeling which he felt were substantive. Tr. 1/31/12, p. 90. He did explain to Petitioner that inaccuracies are not equivalent to perjury and certain elements must be met to establish perjury. Tr. 1/31/12, p. 25.

With regard to Issue 8, failing to argue on appeal that Kenyon Ebeling committed perjury at trial, this issue was not raised on appeal, although counsel testified he certainly would have raised it if he could "establish without equivocation that she lied or that she perjured herself at the grand jury." Tr. 1/31/12, p. 29. Counsel felt there was no merit to the issue and felt that there were other issues raised which were more likely to result in a successful appeal. Tr. 1/31/12, p. 29-39. Counsel further testified he was "dangerously close with the Superior Court on the number of issues we were raising." Id. Petitioner's counsel expressed his reasoning and strategy in dealing with Ms. Ebeling's inconsistent statements and what actions he took to bring these issues to the attention of the jury. His explanation certainly demonstrated sound legal reasoning in his approach

9

that this Court cannot question. Therefore, this Court dismissed Petitioner's claim's concerning Kenyon's Ebeling's alleged perjury at Issues 7 and 8.

Petitioner argues at Issue 10 that counsel was ineffective for failing to litigate prosecutorial misconduct of the Attorney General's office in withholding discovery documents. Trial counsel stated that he received a voluminous amount of discovery from the Attorney General's office. Tr. 1/31/12, p. 80. He also received transcripts from the grand jury. Tr. 1/31/12, p. 80. He received a copy of a report or a "debriefing" of Kenyon Ebeling. Tr. 1/31/12 pp. 81-83. Furthermore, he received criminal histories relating to various co-defendants and witness and used the information on cross-examination of at least one witness, Joseph McLaughlin. Tr. 1/31/12, p. 83. Trial counsel could never know if there was a specific document he did not receive but he was not aware of any document having existed that he did not receive.

Specifically, Petitioner seems to focus on a 2002 debriefing or report which he contends he never received through discovery. There was a sidebar at the first day of the trial regarding a 2002 debriefing or report which the Assistant Attorney General advised did not exist Tr. 5/22/06, pp. 70-76. He stated when he referenced informaton from 2002, he was referring to a "collection" of information law enforcement received that Petitioner was moving drugs in the region as early as

10

2002. Tr. 5/22/06, pp. 70-76. He further advised he would check over the lunch break, and if any additional information existed, it would be copied and provided after the break. Id. Agent Scott Merrill testified that there was no 2002 debriefing or report because he became involved with the case in 2004 when Kenyon Ebeling reported a theft to the State college police. Tr. 1/31/12, pp. 193-193. Agent Merril further testified that some information was presented to the grand jury concerning events as early as 2002, but none of this information was presented to him until 2004, and no report would have been prepared prior to 2004. Tr. 1/31/12, p. 194. Agent Merrill was not aware of any exculpatory evidence prior to the initiation of the investigation in 2004. Tr. 1/31/12, p 195. This Court is convinced that no report dating back to 2002 existed, and has no reason to believe that trial counsel was denied any discoverable materials; therefore, this Court dismissed Issue 10 of the Amended PCRA Petition.

Regarding Issue 11, Petitioner complains that he was advised to waive his right to testify. Trial counsel testified that if he was to have put Petitioner on the stand he would have either admitted to the deliveries to Kenyon Ebeling for which he was ultimately acquitted or, testify that he never delivered heroin which would have created an ethical dilemma or attorney-client privilege issue. Tr. 1/31/12, pp. 211-212. Trial counsel further testified that he would have said something to

11

Petitioner such as, he could not put him on the stand unless he denied making deliveries that he had admitted to and he could not suborn perjury. Tr. 1/31/12, p. 213. Trial counsel would have never told him that he could not testify based on prior bad acts and if Petitioner thought so, he misunderstood. Tr. 1/31/12, p. 42. Trial counsel further testified that he has never told any client that he does not have a legal right to testify. Tr. 1/31/12 at 43. Based on the testimony of trial counsel concerning the decisions made regarding Petitioner's waiver of his right to testify, this Court dismissed Issue 11 raised in the Amended PCRA Petition because this Court believes Petitioner made this decision with the advice of counsel but was never told that he had no right to testify or could not.

Regarding Issue 12, Petitioner contends his counsel was ineffective on appeal for failing to correct the statement made by the trial court and Superior Court (at p. 11 of the Opinion filed on March 10, 2008) that the confidential informant, Kenyon Ebeling, was not involved in any drug deliveries at issue in this case. Petitioner contends because Ms. Ebeling was physically present at the incidents on October 27, 2004 and November 2, 2004, the Opinions of the trial court and Honorable Superior Court were incorrect. He further argues that he did not meet Agent Merril until November 24, 2004. On November 24, 2004, Mr. Lee got into the vehicle with Ms. Ebeling and

12

Agent Merril and handed the drugs to Ms. Ebeling as witnessed by Agent Merril and described in further detail below. However, Ms. Ebeling's testimony was not crucial to the Commonwealth's case as there were consensual recordings of phone calls, and Agent Merril was in the vehicle with Ms. Ebeling and present for the deliveries as explained below. Therefore, the misstatements Petitioner refers to are inconsequential. Although Kenyon Ebeling was part of the deliveries on October 27, 2004 and November 2, 2004, there was plenty of other corroborating evidence to support the convictions for the deliveries on October 27, 2004, November 2, 2004 and November 24, 2004. Ms. Ebeling was only very tangentially involved in the other deliveries which resulted in convictions which are discussed below. In essence, the jury need not have relied on anything Ms. Ebeling testified to regarding the deliveries of which Petitioner was convicted therefore, this Court dismissed Issue 12 of the Amended PCRA Petition.

Agent Merril testified regarding the October 27, 2004 delivery at pages 120-132 on day 1 of the jury trial on May 22, 2006. Kenyon Ebeling telephoned Petitioner to arrange the purchase of cocaine for Agent Merrill. That telephone calls was recorded. Ms. Ebeling was advised to go to Taco Bell, and when she and Agent Merrill arrived, they met Jena Reeves. Ms Ebeling approached Ms. Reeves' vehicle, got in to Ms. Reeve's vehicle, exited and returned to Agent Merril's vehicle

13

and handed him two eighth ounces of cocaine. Tr. 5/22/06, p. 132

Agent Merrill testified regarding the November 2, 2004 delivery, at pages 143-151 on day 1 of the trial on May 22, 2006. Kenyon Ebeling set up the purchase of heroin in recorded telephone conversations with Petitioner. Petitioner advised her to meet him at an apartment on Waupelani Drive. Agent Merril drove Ms. Ebeling in his vehicle. Ms. Ebeling exited the vehicle and walked up to Petitioner, went inside the building with Petitioner, and then returned to Agent Merril's vehicle and presented him with packets of heroin.

Regarding November 24, 2004, Agent Merrill testified at pages 172-180 of the transcript on day 1 of the trial on May 22, 2006. Petitioner got into a vehicle with Kenyon Ebeling and Agent Merrill and they drove to South Gate and Waupelani Drive. Petitioner went inside an apartment and appeared from the apartment with bags of illicit drugs which he handed to Kenyon Ebeling who then handed the bags to Agent Merril. Agent Merril gave Mr. Lee the money for the drugs.

Regarding the delivery on December 3, 2004, Agent Merrill testified at pages 354-366 of the transcript from day 1 of the jury trial on May 22, 2006 that he contacted Petitioner by phone to arrange the purchase of cocaine and made arrangements to pay money owed for fronted heroin. They arranged to meet at Radio Shack on North Atherton Street, Petitioner then advised Agent

14

Merril to go to the pool area of a nearby apartment complex. At the apartment complex, Agent Merril met Petitioner at Building K, where Petitioner pointed him to a McDonald's Chicken McNugget box which contained one half ounce of cocaine.

Concerning the delivery on December 30, 2004, Agent Merrill testified, on day 1 of the trial on May 22, 2004 at pages 374-380 and 385-387 of the transcript, that he spoke to Petitioner on the phone and requested heroin. Petitioner advised him to go to the pool area of the apartment complex where they had previously met. He then advised Agent Merril to go to Building J. Petitioner met Agent Merrill and pointed out a cigarette pack which contained baggies of heroin and cocaine.

Agent Merril testified, on day 1 of the trial on May 22, 2004 at pages 397-411 of the transcript, that he had phone conversations with Petitioner starting on January 4, 2005, regarding purchasing a large quantity of heroin. On January 11, 2005, Agent Merrill spoke with Petitioner on the phone to arrange a meeting. He was instructed to go to a laundromat near College Avenue. When he went inside, a woman, Michelle Sopp, asked him if he was there to see Mr. Lee, he responded in the affirmative and she told him "it" was in the second washing machine. Agent Merril located the machine and found a blue bag which contained bags of heroin. Petitioner was arrested

15

on this day.

Based on the facts of all of the deliveries which resulted in convictions, there was ample evidence independent of any testimony of Kenyon Ebeling supporting the jury's convictions.

Therefore, any misstatements by this Court or the Honorable Superior Court are inconsequential.

For these reasons this Court denied the claims in the Amended PCRA Petition in entirety.

This Court hopes this Opinion aids the Honorable Superior Court in this matter.

BY THE COURT:

Date: 2/20/14

Bradley P. Lunsford, Judge

16