J-A10036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| I.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.O.J. | : | |
| | : | |
| Appellant | : | No. 1213 EDA 2019 |

Appeal from the Order Entered April 11, 2019
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  13-01490 PACSES No. 475115926

BEFORE:  BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MAY 18, 2020**

K.O.J. appeals from the Court of Common Pleas of Philadelphia County

(trial court) order finding her in civil contempt for failure to pay child support

to I.D. and sentencing her to 30 days' incarceration, with a purge condition of

$2,000.  We affirm in part, vacate in part and remand for further proceedings.

**I.**

We glean the following facts from the certified record and the trial

court's opinion.

> On May 12, 2016, [I.D.] filed a complaint for child support against
> [K.O.J.] for the support of two minor children.  On August 14,
> 2017, after multiple continuances of the child support conference,
> the court entered an interim order of support, in the amount of
> $448.75.  On August 21, 2017 and August 29, 2017, [K.O.J.] filed
> support exceptions alleging that she was "sick and cannot to
> work."  On December 8, 2017, this Court denied [K.O.J.'s] support

---

[*] Retired Senior Judge assigned to the Superior Court.

exceptions and entered a final order of support in the amount of $448.75. On or about May 31, 2018, [I.D.] filed a petition for contempt of support, with a hearing date scheduled for June 19, 2018, because of [K.O.J.'s] failure to pay her support obligation. By agreement of the parties, the June 19, 2018 hearing was relisted for July 17, 2018, for a payment review. On July 16, 2018, [K.O.J.] filed a petition for modification of the existing order of support, and, as a result, the contempt hearing scheduled for July 17, 2018, was relisted for October 30, 2018, pending outcome of [K.O.J.'s] modification review. At the October 30, 2018 hearing, the matter was relisted for January 11, 2019, for a status of [K.O.J.'s] modification review and for a payment review. At the January 11, 2019 hearing, the matter was relisted for April 11, 2019, with an order directing [K.O.J.] to "provide results of her modification; a letter from social security disability regarding the status of her claim; and an updated doctor's note of diagnosis, prognosis, and employability."

Trial Court Opinion, 10/11/19, at 1-2.

At the hearing on I.D.'s petition to hold K.O.J. in contempt, K.O.J. was the sole witness.[1] K.O.J. admitted that she was aware that there was a court order obligating her to pay $448.75 per month in child support, and with the exception of a $200 payment she made on the day of the hearing, she had not made any payments.[2] She testified that she makes "a little bit of money" working in a hair-braiding shop and had worked there for approximately four years. K.O.J. had also owned her own hair salon until 2012, and she reopened it in 2016, but she was unable to pay the rent and had to close again in 2017.

---

[1] K.O.J. testified with the aid of a French interpreter.

[2] At the time of the hearing, K.O.J. owed over $13,000 in child support.

When discussing K.O.J.'s income, I.D. confronted her with a support demographic form that she had signed at her court date on October 17, 2018. In that form, K.O.J. had stated that she had an ownership interest in a business. K.O.J. testified at the contempt hearing that she did not own a business in October 2018 and that her attorney had helped her fill out the forms at previous court dates. At her court date in January 2019, K.O.J. again had assistance in filling out the demographic form, and her representative wrote that K.O.J.'s monthly income was $1,300. On the day of the contempt hearing, K.O.J. filled out the form herself and left blank the space for her weekly income.

K.O.J. testified that she does not make a fixed income through her current job at the hair-braiding shop, but that she earns between $700 and $900 per month and is paid in cash. K.O.J. presented receipts from the salon showing that in January and February 2019, she earned between $95 and $175 per week. In the demographic form from October 2018, K.O.J. had stated that she earned $300 per week, but at the time of the contempt hearing, she testified that she rarely earned that amount.

When she works at the hair-braiding salon, K.O.J. is paid approximately half of the client's fee for hair braiding, which differs depending on the style. She does not pay a flat fee for use of a chair in the salon. K.O.J. cannot work at all some weeks due to her headaches, and she is often unable to finish a client's hair because of headaches and back problems. In those cases, she

splits her percentage of the fee with the employee who finishes the customer's braiding.

K.O.J. testified that she did not work during the two weeks prior to the contempt hearing, but she was able to make a $200 payment that day because she had received some money from her sister. K.O.J.'s monthly expenses include $200 for rent, which is paid for by her daughter and sister. She owes $240 per month for her car loan and $145 for car insurance. K.O.J.'s siblings and daughter provide her with money to pay her bills, including her car loan and utilities, and K.O.J. pays the remainder. Even so, K.O.J. testified that she was three months' late on her car payments and was behind on her gas bill. When the trial court questioned K.O.J. as to how she was able to purchase a car and secure financing on such a limited income, K.O.J. responded that at the time she purchased the car, she had a second job as a home health aide. She testified that she left that job because her back problems prevented her from lifting patients.

After the close of testimony, I.D. requested that the trial court hold K.O.J. in civil contempt, sentence her to 30 days of incarceration, and set the purge amount at $2,000. He argued that K.O.J.'s testimony regarding her income was incredible and inconsistent with the forms she filled out at prior proceedings. K.O.J. argued that she did not have the ability to pay as she is unable to work full time due to her health conditions, relies on family members to pay her bills, and is in arrears on several of her bills.

The trial court found K.O.J. in civil contempt and sentenced her to 30 days' incarceration, with a purge condition of $2,000. K.O.J. then filed this appeal.[3, 4]

## II.

As K.O.J.'s first two claims of error on appeal are related, we address them together.[5] First, she argues that the trial court erred by failing to make evidentiary findings at the conclusion of the contempt hearing regarding her present ability to pay either the child support or the purge amount. Second, she contends that the trial court erred in holding her in civil contempt and setting the purge condition when the record does not support a finding that she had the present ability to pay child support or the $2,000 purge amount.

_____

[3] The trial court did not order K.O.J. to file a concise statement pursuant to Pa. R.A.P. 1925(b). I.D. has not filed a brief in this appeal.

[4] The trial court sent a letter to this court on July 22, 2019, requesting that K.O.J.'s appeal be dismissed as moot because she had completed her 30-day sentence of incarceration. **See** Letter, 7/22/19. This court responded on July 25, 2019, declining to dismiss the appeal as moot based on our holding in **Warmkessel v. Hefner**, 17 A.3d 408, 413 (Pa. Super. 2011). **See** Letter, 7/25/19. There, we held that the appellant's challenge to his sentence for civil contempt of a support order met an exception to the mootness doctrine when, even though he had completed his sentence, he remained subject to the same support order and he and other similarly situated defendants could raise the same claim in the future. **Warmkessel, supra**.

[5] "Appellate review of a contempt order is limited to deciding whether the trial court abused its discretion. The trial court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in an unreasonable manner, or does not follow legal procedure." **Glynn v. Glynn**, 789 A.2d 242, 248 (Pa. Super. 2001) (_en banc_) (citations omitted).

**A**.

When an individual fails to comply with a court order to pay support, the obligee may file a petition for contempt to seek enforcement of the order. "[P]resent inability to comply is an affirmative defense to be proved by the contemnor." *Travitsky v. Travitsky*, 534 A.2d 1081, 1085 (Pa. Super. 1987).

> [W]here, as here, the court in civil proceedings finds there has been willful noncompliance with its earlier support orders constituting contempt but the contemnor presents evidence of his present inability to comply and make up the arrears, the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced. Beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply.

*Barrett v. Barrett*, 368 A.2d 616, 621 (Pa. 1977). At the time of the contempt hearing, the trial court "shall make a finding, on the record, as to whether the respondent, based upon the evidence presented at the hearing, does or does not have the present ability to pay the court-ordered amount of support." Pa. R.C.P. 1910.25-5(b).

A person who willfully fails to comply with a support order may be held in civil contempt and sentenced to up to six months of incarceration, a fine, or up to one year of probation. 23 Pa.C.S. § 4345(a). If the contemnor is sentenced to incarceration, the trial court must then specify an appropriate purge condition. 23 Pa.C.S. § 4345(b). This purge condition should not be punitive; rather, "[t]he purpose of a civil contempt order is to coerce the

contemnor to comply with a court order." ***Childress v. Bogosian***, 12 A.3d 448, 465 (Pa. Super. 2011) (citation omitted). Thus, a trial court abuses its discretion by imposing a monetary purge condition if the contemnor does not have the present ability to pay the purge amount. ***Id.***; ***see also Hyle v. Hyle***, 868 A.2d 601, 605 (Pa. Super. 2005) (holding that trial court abused its discretion in setting purge condition based on finding that contemnor could earn the purge amount within "a short period of time"). The trial court's conclusion regarding the contemnor's present ability to pay the purge condition must be supported by the record and cannot be based on speculative factors such as potential earning capacity or values of assets not in evidence. ***See Travitsky, supra.***

## B.

K.O.J. first contends that the trial court erred by failing to make evidentiary findings at the conclusion of the contempt hearing regarding her present ability to pay either the child support or the purge amount. While the trial court's disbelief of K.O.J.'s testimony regarding her income is evident throughout the proceedings, it failed to state "on the record" as required by Pa. R.C.P. 1910.25-5(b), that at the time the finding of contempt was entered, the foundation for its determination that K.O.J. had the present ability to pay her $448.75 monthly child support obligation or the $2,000 purge condition.

In **Commonwealth v. Ragoli**, 524 A.2d 933, 937 (Pa. Super. 1987), we addressed an analogous situation under Pa. R. Crim. P. 1405(c),[6] which required that the trial court "state on the record the reasons for the sentence imposed." We stated that:

> A reading of the Rule discloses one salient point, i.e., everything which occurs in respect to the sentencing proceeding must be of record; *this means in open court*. Such a practice has been woven into our judicial system not only to afford the defendant the opportunity to question the proceedings, but it avails the appellate courts the advantage to assess any claims of error (be they related to pre-trial, trial, post-trial or sentencing) from a fully developed record and dispenses with a needless remand. **See Commonwealth v. Rivera**, 339 Pa.Super. 242, 488 A.2d 642 (1985) (*en banc*); Pa.R.App.P. 1926. To the same effect, see Rule 1123, which, likewise, speaks in terms of the defendant being advised of his rights "on the record." **Commonwealth v. Picker**, 293 Pa.Super. 381, 439 A.2d 162 (1981).

**Id.** (emphasis in original).

In a contempt proceeding, the Rule's requirement that a finding that a contemnor "does or does not have the present ability to pay the court-ordered amount of support" must be "on the record" is important because contempt sentences are of short duration. This is what occurred here. K.O.J. was held in contempt on April 11, 2019, while the trial court's Pa. R.A.P. 1925(a) opinion was not filed until October 10, 2019, well after she had served her 30-day sentence.

---

[6] This rule has since been renumbered at Pa. R. Crim. P. 704.

The question then is what is the remedy. Where there is noncompliance by a trial court in placing finding "on the record," generally, we have remanded to the trial court to make the appropriate findings. **See Ragoli**, **supra.** In **Ragoli**, we reversed the order and remanded the trial court to impose a sentence with reasons set on the record.

Pa. R.C.P. 1910.25-5(b)'s requirement that a finding be placed on the record at the time of the hearing is also similar to the requirement in Pa. R. Crim. P. 581(I), governing suppression hearings, which requires suppression courts to place certain findings of fact on the record at the conclusion of the hearing. We have observed that suppression courts often wait until after the fact, or until writing a Pa. R.A.P. 1925(a) opinion, to set forth findings of fact. We disapprove of this practice but, in the interest of judicial economy, will only remand for the suppression court to put findings on the record if the court's factual findings and reasoning were not placed on the record at a later time. **Compare Commonwealth v. Sharaif**, 205 A.3d 1286, 1289-90 (Pa. Super. 2019) (remanding for a new suppression hearing when the suppression court did not make findings of fact on the record or file a Pa. R.A.P. 1925(a) opinion and the presiding judge later retired), with **Commonwealth v. Parker**, 161 A.3d 357, 360 (Pa. Super. 2017) (holding that remand for noncompliance with rule was unnecessary when the suppression court failed to put findings on the record at the conclusion of the hearing, but later filed a Pa. R.A.P. 1925(a) opinion detailing its findings of fact and conclusions of law).

In this case, while the trial court failed to comply with Pa. R.C.P. 1910.25-5(b)'s requirement that a finding regarding K.O.J.'s present ability to pay support be placed on the record, it did file a Pa. R.A.P. 1925(a) opinion where it stated reasons for deciding that she had the ability to pay child support. Therefore, we find it unnecessary to remand, especially when K.O.J. has already served her contempt sentence, and we proceed to the merits of her claim.

## C.

As to the merits, K.O.J. contends that the trial court erred in holding her in civil contempt and setting the purge condition when the record does not support a finding that she had the present ability to pay child support. In its 1925(a) opinion, the trial court provided the following reasons in support of its order:

> [K.O.J.] had the present ability to purge herself of the contempt. [K.O.J.] was receiving roughly $140.00 to $300.00 a week in income, and in addition, [K.O.J.] was receiving money from her daughter, sister, and brothers. [K.O.J.], from inception of the order of support and the contempt petition, continuously paid her rent, car payment, car insurance, cell phone bill, and utilities. Furthermore, [K.O.J.] had a car, which was an asset, and with [K.O.J.'s] purported limited income she could still afford her car, car insurance, and cell phone. In addition, as per [K.O.J.'s] testimony, regarding her income, it was computed to be less than $10,000 a year; therefore, an individual making less than $10,000.00 a year cannot afford a car payment of $200.00 with car insurance and other monthly and daily living expenses. Thus, this Court determined that [K.O.J.'s] testimony regarding income and assets was not truthful. Therefore, based on [K.O.J.'s] income and additional monies received from her daughter, sister, and brothers, this Court reasonably determined that [K.O.J.] had the present ability to pay a purge amount of $2,000.00.

Trial Court Opinion, 10/11/19, at 4.  However, those findings are not supported by the record.  *See K.M.G. v. H.M.W.*, 171 A.3d 839, 845 (Pa. Super. 2017) ("Although we must afford the trial court great deference as the fact-finder, to withstand appellate review, the trial court's factual findings must have support in the record.").

First, the evidence adduced at the hearing does not support the trial court's conclusion that K.O.J. had the *present* ability to pay the support amount.  K.O.J.'s uncontradicted testimony at the contempt proceeding established that she had not been able to work for two weeks prior to the contempt hearing.  The most recent evidence pertaining to her income, receipts from her work at the salon, indicated that for four weeks in January and February 2019, she had been paid $160, $95, $140, and $175.  Notes of Testimony, 4/11/19, at 31-32.  The receipts supported her testimony that she rarely earns as much as $300 per week, and in an average month, she earns $700 to $900.  The trial court apparently relied on a demographic form that K.O.J. had signed at her October 2018 court date to reach the conclusion that she earns $300 per week.  However, this information was approximately six months out of date and cannot serve as a basis to find that she had the present ability to pay child support at the April 11, 2019 contempt hearing.

Second, in addition to disregarding K.O.J.'s testimony about her present income, the trial court misapprehended the amount of financial support that K.O.J. was receiving from her family members.  K.O.J. set forth, in detail, her

monthly expenses and the amount of financial help she receives from family to meet her obligations. Her monthly bills include $200 for rent, $240 for her car, $145 for car insurance, $80 for electricity, approximately $200 for gas, $50 for her cell phone, and $40 for internet service. *Id.* at 49-54. One of her sisters gives her $300 toward her expenses, and her daughter pays for the car loan, electricity and gas. *Id.* Even with help from her family, K.O.J. testified that she was three months behind on paying her car loan and was behind on her gas bill. *Id.* at 55-56.

Consequently, K.O.J. set forth uncontradicted evidence that she did not have a present ability to pay over $400 per month in child support, even though she did not dispute that she had willfully failed to comply with the order.

Nevertheless, even though K.O.J. did not have the ability to pay child support at the time of hearing, the trial court could still find her in contempt for failure to make any effort to make child support payments throughout the pendency of the support order when her income had been higher in the past. In *Orfield v. Weindel*, 52 A.3d 275, 276 (Pa. Super. 2012), we affirmed a judgment of civil contempt when the contemnor made one nominal child support payment over the course of two years, during which he was intermittently working under the table. However, no evidence was adduced at the contempt hearing establishing the contemnor's current income or ability to pay the purge amount of over $4,000. We held that even though the

contemnor did not have the present ability to comply with the support order, the trial court did not err in holding him in contempt when he had made a single child support payment over the course of two years, despite being employed at various times during that period.

The factual circumstances here are on all fours with the factual circumstances of **Orfield**. Following a conference and hearing during which both parties presented evidence of their income, K.O.J. was initially ordered to pay $448.75 per month in child support by an interim order in August 2017. A final order of support was entered for that amount in December of that year. I.D. filed the contempt petition in May 2018 after K.O.J. failed to make any support payments, and K.O.J. did not file a petition to modify the support order until July 2018. Modification had not been granted by the time of the contempt hearing. K.O.J. concedes that she made a single payment of $200 in child support during the almost two years that the support order was in effect, and that at the time of the contempt hearing, she was in arrears of over $13,000. K.O.J. testified that she had been employed part-time at the salon for four years, and the demographic support forms she submitted at prior court dates indicated that her income fluctuated during that time. Even so, she made no effort whatsoever to pay any child support during the almost two years that the support order was in effect. As a result, the trial court did not err in finding her in contempt.

**D.**

Even if she was properly held in contempt, K.O.J. contends that the trial court abused its discretion because the record does not support a finding that she had the present ability to pay the $2,000 purge amount. As outlined above, when a trial court finds that an individual is in contempt for failure to comply *in the past* with a support order, but the contemnor presents evidence of a *present* inability to pay, in sentencing the contemnor to incarceration, the trial court must fashion a purge condition with which the contemnor can presently comply. **Barrett, supra**. Thus, because K.O.J. presented evidence of her present inability to comply with the order, the trial court was required to make findings supported by the record beyond a reasonable doubt that she had the present ability to pay the $2,000 purge amount. **See Childress, supra**; **Hyle, supra**. Based on the same evidence outlined above, the record does not support the trial court's conclusion that K.O.J. had the present ability to pay $2,000 to purge herself of the contempt.

As outlined above, K.O.J.'s uncontradicted testimony was that she had not worked for two weeks prior to the contempt hearing and her receipts from working in January and February 2019 showed that she had earned paychecks of $160, $95, $140, and $175. N.T. at 47-48; 31-32. In the average month, she earns between $700 and $900, and her ability to work varies depending on her medical conditions. She did not offer any testimony nor was she questioned regarding whether she had any savings or valuable assets. The

trial court in its opinion regarded her vehicle as an asset, but there is no evidence of record regarding the value of the car or her ability to sell the vehicle. *See* Trial Court Opinion, 10/11/19, at 4. The trial court's conclusion that K.O.J. was untruthful about her earnings because she could not have secured a car loan and maintained payments based on her reported income is not supported by the record and is mere speculation.

Even if the trial court's finding that K.O.J. earned, at the most, $300 per week was supported by the record, this finding does not support the conclusion, beyond a reasonable doubt, that K.O.J. had the present ability to pay the purge condition of $2,000. *See Travitsky, supra* (holding that the trial court abused its discretion in holding that the contemnor's earning capacity of $400 per week established that she had the present ability to pay the $26,000 purge amount). Again, there was no evidence that K.O.J. had any savings or other assets that would allow her to presently pay the purge amount. Even if she had been able, notwithstanding her health conditions, to earn the $300 per week, she was taken into custody and incarcerated immediately following the hearing, allowing her no time to earn the purge amount. N.T. at 66-68. The trial court's reasoning in its Pa. R.A.P. 1925(a) opinion for imposing the $2,000 purge amount is not supported by the evidence of record.

While it did not err in holding K.O.J. in contempt, the trial court abused its discretion in imposing the $2,000 purge amount because the record does

not support the conclusion, beyond a reasonable doubt, that she had the present ability to pay that amount. Accordingly, we affirm the finding of contempt, but vacate in part and remand for the trial court to fashion a new purge condition that would be sufficiently coercive, but with which K.O.J. could presently comply. **Orfield**, **supra**.

## III.

In her final issue, K.O.J. argues that the trial court erred in demonstrating a pattern of bias and discrimination against her throughout the contempt proceedings. She argues that the trial court engaged in "an ongoing pattern of judicial bias manifested through bullying, intimidation, and veiled threats to deny [K.O.J.] necessary language interpretation." K.O.J.'s Brief at 32. K.O.J. apparently seeks to have the trial court disqualified from further proceedings in this matter. **Id.** at 33-34. As this issue was not raised in the trial court, it is waived.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a). "[A] party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived." **Lomas v. Kravitz**, 170 A.3d 380, 390 (Pa. 2017) (citation omitted). Further, our Supreme Court has held that this court does not have

the authority to *sue sponte* order recusal of a trial court judge.

***Commonwealth v. Whitmore***, 912 A.2d 827, 834 (Pa. 2006).

> As a general rule, the proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried. He [or she] may determine the question in the first instance, and ordinarily his [or her] disposition of it will not be disturbed unless there is an abuse of discretion. This is, in part, to allow the requested judge to state his or her reasons for granting or denying the motion and, as the allegedly biased party, to develop a record on the matter.

***Commonwealth v. Lucky***, __ A.3d __, at *9-10 (Pa. Super. Feb. 13, 2020) (quoting ***Whitmore***, ***supra***). K.O.J. must address her request for recusal to the trial court in the first instance.[7]

Order affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[7] K.O.J. cites ***Dimonte v. Neumann Med. Ctr.***, 751 A.2d 205 (Pa. Super. 2000), and ***Harman ex rel. Harman v. Borah***, 756 A.2d 1116 (Pa. 2000), for the proposition that her recusal claim is not waived if "it appears from all the circumstances that a timely objection to perceived judicial misconduct would be meaningless." K.O.J.'s Brief at 34. However, as she acknowledges, in both of those cases, the party seeking recusal raised the issue in front of the trial court through a post-trial motion, allowing the court to address the claim of bias or misconduct prior to appeal. ***Dimonte***, ***supra***, at 211; ***Harman***, ***supra***, at 1125. The litigant seeking recusal has the burden of establishing that raising the issue at the earliest possible time would have been futile, and the mere allegation that the motion would have been denied is not sufficient to establish futility. ***Harman***, ***supra***. We acknowledge that post-trial motions are not permitted in contempt proceedings. Pa. R.C.P. 1910.25-6. However, as the trial court's assessment of its own impartiality and the appearance of bias is a "personal and unreviewable decision that only the jurist can make," we find it appropriate to be addressed by the trial court in the first instance. ***See Overland Enter., Inc. v. Gladstone Partners, LP***, 950 A.2d 1015, 1021 (Pa. Super. 2008).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/18/20</u>